441 P.2d 550

Ezra ODLE, Dairy Commissioner, State of Arizona, Appellant,

v.

SHAMROCK DAIRY OF PHOENIX, INC., an Arizona corporation, Appellee.

No. 1 CA–CIV 622.

Court of Appeals of Arizona.

May 22, 1968.

Rehearing Denied June 25, 1968.

Review Denied July 12, 1968.

Darrell F. Smith, Atty. Gen., by Kent A. Blake, Sp. Asst. Atty. Gen., and John V. Riggs, Asst. Atty. Gen., for appellant.

Jennings, Strouss, Salmon & Trask, by Riney B. Salmon and Rex E. Lee, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal by the Arizona State Dairy Commissioner from the judgment of the Superior Court of the State of Arizona in and for the County of Apache which found that two products of the appellee, Shamrock Dairy of Phoenix, Inc., were not milk products within the meaning of the Arizona statutes and therefore not subject to the jurisdiction or regulation of the Arizona State Dairy Commissioner.

We are called upon to determine whether a product which contains no milkfat and less than 8¼% milk solids-not-fat is

a milk product within the meaning of the Arizona statute A.R.S. § 3–601 et seq. and the 1953 Milk Ordinance and Code of the United States Public Health Service, Department of Health, Education and Welfare.

The facts necessary for a determination of this matter on appeal are as follows. Shamrock Dairy of Phoenix, Inc., hereinafter referred to as Shamrock, is an Arizona corporation with its principal place of business in Phoenix, Arizona. In addition to its dairy operation in Phoenix, it has a plant in Mesa, Arizona, where it produces two products known as "High-Protein Drink" and "Chocolate Flavored Beverage". The two products are marketed in containers similar to those containers used for the sale and distribution of milk and milk products.

An analysis of the products, made at the request of the Arizona State Dairy Commissioner, revealed that the High-Protein Drink did not contain any milkfat but did contain 7.5% milk solids-not-fat (skim milk powder); water, 88.8%; vegetable fat, 3.11%; and other components including corn syrup solids, stabilizers, and emulsifiers, 0.59%. The percentages of the components found in the Chocolate Flavored Beverage are: milk solids-not-fat, 7.3%; vegetable fat, 1.34%; water, 85.2%; and other components, 6.16%, but no milkfat.

The formula as well as some of the materials necessary for the production of the two products were supplied to Shamrock by Farm Products Laboratories of Buena Park, California. The process by which the products were manufactured is begun by placing a measured amount of water in a cylindrical tank and other relevant ingredients except for the vegetable fat are inserted into a "horn" located near the tank where they are mixed. The water is then pumped out from the bottom part of the tank underneath the ingredient horn and up to the top of the tank. This circulation process continues until all the ingredients have mixed into the water. The vegetable fat is a malleable solid which is introduced directly into the cylindrical tank either prior or subsequent to the aforedescribed mixing process and dissolves in the vat after it is so introduced.

The milk solids-not-fat, or skim milk powder, is used in the High-Protein Drink and Chocolate Flavored Beverage to lend body and to enhance its flavor. The testimony of the representatives of Shamrock testified that High-Protein Drink is advertised as a beverage for drinking, baking, and cooking, and along with the Chocolate Flavored Beverage is homogenized, pasteurized, and must be kept under refrigeration.

Shamrock petitioned the State Dairy Commissioner to determine whether the two products in question, as well as other products not discussed here, were in fact milk products under the statute and therefore under the control of the Arizona State Dairy Commissioner. A hearing was held before the State Dairy Commissioner and the Commissioner ruled that the two items were in fact milk products. Shamrock appealed to the Superior Court pursuant to the Judicial Review of Administrative Decisions Act, A.R.S. § 12–901 et seq. From a judgment of the Superior Court decreeing that High-Protein Drink and Chocolate Flavored Beverage were not milk products the State Dairy Commissioner appeals.

Our statute reads:

"A. The production, transportation, handling and sale of milk and milk products, and the inspection of dairy herds, dairies and milk plants shall be regulated in accordance with the terms of the unabridged form of the 1953 edition of the United States public health service milk ordinance and code, a certified copy of which shall be on file in the office of the secretary of state, except that all milk, reconstituted or recombined milk and flavored milk prepared for sale to or use by the ultimate consumer shall contain not less

than three and five tenths per cent butter fat." A.R.S. § 3-605.

The United States Public Health Service Milk Ordinance and Code (1953) contains the following definitions:

"A. Milk.—Milk is hereby defined to be the lacteal secretion, practically free from colostrum, obtained by the complete milking of 1 or more healthy cows, which contains not less than 8¼ percent milk solids-not-fat and not less than 3¼ percent milkfat.

\* \* \* \* \* \*

"D. Skim Milk.—Skim milk is milk from which a sufficient portion of milkfat has been removed to reduce its milkfat content to less than 3¼ percent.

\* \* \* \* \* \*

"H. Reconstituted or Recombined Milk. —Reconstituted or recombined milk is a product which results from the recombining of milk constituents with water, and which complies with the standards for milkfat and solids-not-fat of milk as defined herein.

\* \* \* \* \* \*

"H-2. Reconstituted or Recombined Skim Milk.—Reconstituted or recombined skim milk is a product which results from the recombining of skim-milk constituents with water, and which contains not less than 8¼ percent milk solids-not-fat.

\* \* \* \* \* \*

"K. Milk Products.—Milk products shall be taken to mean and to include cream, sour cream, half and half, reconstituted half and half, whipped cream, concentrated milk, concentrated milk products, skim milk, nonfat milk, flavored milk, flavored drink, flavored reconstituted milk, flavored reconstituted drink, buttermilk, cultured buttermilk, cultured milk, vitamin D milk, reconstituted or recombined milk, reconstituted cream, reconstituted skim milk, cottage cheese, creamed cottage cheese, and any other product made by the addition of any substance to milk, or to any of these milk products, and used

for similar purposes, and designated as a milk product by the health officer."

█ The testimony indicates that the two products in question contain no milkfat, that any fat they do contain is vegetable fat, and further that they contain less than 8¼% milk solids-not-fat, the Chocolate Beverage containing 7.3% and the High-Protein Drink containing 7.5% of milk solids-not-fat. Since the two products contain no milkfat and contain less than 8¼% milk solids-not-fat, Shamrock's products do not come within Section A, Section H, or Section H-2 of the Public Health Ordinance.

█ Appellant, however, contends that Shamrock's products come under Subsection K of the ordinance which, when omitting parts not relevant, reads:

"Milk products shall be taken to mean and to include \* \* \* any other product *made by the addition of any substance to milk, or to any of these milk products,* and used for similar purposes, and designated as a milk product by the health officer." Section K, Public Health Ordinance, supra. (Emphasis ours.)

Appellant states in his brief as follows:

"\* \* \* For purposes of illustration we will mix one hundred pounds (100 lbs.) of each in a vat. \* \* \*.

"In each case start by putting all of the skim milk powder in the vat or cylindrical tank. This amounts to 7.5 lbs. and 7.3 lbs. \* \* \*

"We next add 83.409 and 81.184 pounds of water in the cases of HPD [High-Protein Drink] and CFB [Chocolate Flavored Beverage] respectively. *At this very point, we have a legal reconstituted skim milk* as defined in Section H-2 of the Code and referred to in the first half of Section K because the skim milk powder equals 8.25% of the total amount of the powder and water combined. \* \* \*

"In each product, therefore, we start off with a 'base' consisting of legal reconstituted skim milk, one of the milk

**518**

products enumerated in the first half of Section K. Moreover, in each case, this 'base' amounts to the substantial part of the product. * * *

"To the reconstituted milk 'base' of HPD appellee adds 5.391 more pounds of water, 3.11 pounds of vegetable fat, and 0.59 pounds of other components consisting of FPL mix, corn syrup solids, stabilizers and emulsifiers."

Appellant contends that this "base" constitutes approximately 90% of the end product and that therefore skim milk is a substantial part of the product. Assuming, arguendo, that the products in question were made in this manner we cannot agree with the position taken by the Commissioner. We must consider the final product, and we cannot bring under the supervision of the State Dairy Commissioner products the legislature did not intend to be regulated by said Commissioner.

 There is no evidence that the two products in issue are detrimental to public health, and we find no compelling reason why they should be regulated by the Commissioner in absence of a clear expression of legislative intent that the products should be so regulated. Determining the intent of the legislature is a primary consideration of this Court and takes precedence over other rules and statutory construction. Arizona State Tax Commission v. First Bank Building Corp., 5 Ariz.App. 594, 429 P.2d 481 (1967), Selective Life Insurance Co. v. Equitable Life Assurance Society, 101 Ariz. 594, 422 P.2d 710 (1967). If the meaning of the language used in an act is doubtful, it should be given a construction, if possible, that will reconcile it with the general purposes of the act. The legislature is presumed to express its meaning as clearly as possible and therefore words used in the statute are to be accorded their obvious and natural meaning. Mendholson v. Superior Court, 76 Ariz. 163, 261 P.2d 983 (1953). We do not feel that the formula devised by the Dairy Commissioner was contemplated by the legislature.

We think the clear import of the code in defining skim milk as containing not less than 8.25% milk solids-not-fat, is 8.25% of the whole mixture and not just 8.25% of an amount arbitrarily selected both as to ingredients as well as portions. It is immaterial how these ingredients were combined. It is the end product that is important, and while we do not comment upon what would be the result had Shamrock taken actual skim milk or actual milk products and added thereto, we do not feel in the instant case that there has ever been milk or reconstituted skim milk used in the manufacture of the two products marketed by Shamrock which would bring Shamrock's High-Protein Drink or Chocolate Flavored Beverage under the supervision of the State Dairy Commissioner.

The judgment of the trial court is affirmed.

DONOFRIO and STEVENS, JJ., concur.