574 P.2d 43

STATE TAX COMMISSION, consisting of Bob Kennedy, Chairman, Waldo L. DeWitt and John M. Hazelett, Appellants,

v.

ANDERSON DEVELOPMENT CORPORATION, Appellee.

No. 1 CA–CIV 3272.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 1, 1977.

Rehearing Denied Dec. 7, 1977.

Review Denied Jan. 10, 1978.

Bruce E. Babbitt, Atty. Gen., by Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellants.

Evans, Kitchel & Jenckes, P.C., by Harold J. Bliss, Jr., Phoenix, for appellee.

OPINION

EUBANK, Judge.

The issue in this appeal is whether a contractor performing mining work for a mine operator is entitled to the use tax exemption for mining provided by A.R.S. § 42–1409(B)(2).

Following an audit and hearing, the appellant Tax Commission[1] assessed use and

1. Now Department of Revenue (Laws 1973, ch. 123, § 18).

education excise taxes[2] in the sum of $9,157.59 against appellee for the period of July 1, 1968, through March 31, 1971. Appellee paid the tax under protest and filed an action in the Maricopa County Superior Court, pursuant to A.R.S. § 42–1421. Appellee asked that the tax be declared illegal because it was not subject to the use tax imposed by A.R.S. § 42–1408, since it was exempt under A.R.S. § 42–1409(B)(2). The matter was tried to the court on stipulated facts, followed by cross-motions for summary judgment. Following the filing of briefs and oral argument, the trial judge granted summary judgment for the appellee in the full amount of the assessment, $9,157.59, together with interest.

Appellant Tax Commission appeals from the summary judgment raising a narrow question:

> Is an entity that is not engaged in the business of mining entitled to assert an exemption from use taxation under A.R.S. § 42–1409(B)(2)?

A.R.S. § 42–1409(B)(2) reads:

> B. In addition to the exemptions prescribed by the terms of subsection A, the following categories shall also be exempt:
>
> \*   \*   \*   \*   \*   \*
>
> 2. Mining. Machinery or equipment used directly in the process of extracting ores or minerals from the earth for commercial purposes, including equipment required to prepare the materials for extraction and the handling, loading or transportation of such extracted material to the surface. "Mining" includes underground, surface and open pit operations for the extraction of ores and minerals.

Appellants' question, in part, appears to raise a fact issue: whether appellee proved that it was engaged in a mining activity. In their brief, appellants state: "The appellant would submit, therefore, that under the proper interpretation of A.R.S. § 42–1409(B)(2), Anderson has failed to prove that it was entitled to exemption from the operation of A.R.S. § 42–1408."

In our view, acceptance of appellants' contention regarding the existence of a fact issue is untenable in light of the stipulation of facts. Both the trial court and this Court must take those stipulated facts as substantially proven, although we are free to substitute our own analysis of their legal effect for that of the trial court. *Arizona State Tax Commission v. Parsons-Jurden Corp.*, 9 Ariz.App. 92, 93, 449 P.2d 626, 627 (1969).

The facts show that Ranchers Exploration and Development Corporation was the owner and operator of Bluebird Mine. An "operator" is defined by A.R.S. § 27–301(10) as "the person, association or corporation in immediate possession of an operation as owner or lessee, and, as such, responsible for the management and condition thereof." It is the operator of a mine who is subject to the various regulations imposed by Title 27, A.R.S. and by federal mining law. The October 1, 1964 agreement, entered into between Ranchers and appellee, which was renewed under substantially the same terms on January 4, 1971, required appellee to "provide machinery, equipment, operating personnel, supervisory personnel and other related items to Ranchers for the open-pit mining of the Bluebird Mine." The stipulation then relates:

> 3. Pursuant to that agreement Anderson removed waste rock, overburden and copper oxide ore from the Bluebird Mine and dug, hauled and dumped the ore in heaps for Ranchers' leaching process of copper recovery. . . .
>
> 4. To perform the agreement Anderson purchased from out-of-state vendors three pieces of machinery or equipment, to wit, a Caterpillar scraper from West Texas Equipment Company on or about September 20, 1969 and two Caterpillar tractors from Treanor Equipment Company on or about November 16, 1970.

---

2. In addition to the "use tax" (A.R.S. § 42–1408 et seq.), an educational excise tax and special education excise tax are likewise imposed, §§ 42–1361 and 42–1371(B), as amended. The amount of these taxes is controlled by the amount of the "use tax" liability.

5. The scraper and tractors were operated by Anderson employees under the agreement with Ranchers for the removal of waste rock, overburden and ore from the open-pit Bluebird Mine.

6. Neither a transaction privilege tax (sales) nor use tax was paid to the state of Arizona on the purchase or use of the scraper or tractors by Anderson.

7. Ranchers paid to the state of Arizona the transaction privilege tax on mining pursuant to A.R.S. § 42–1310(2)(a) on the gross receipts or gross income from the copper mined at the Bluebird Mine under its agreement with Anderson.

A.R.S. § 42–1409(B)(2), *supra*, defines "mining" for the purpose of the exemption. The stipulation of facts 3, 4, and 5, above, in our opinion brings the appellee within the definition. Further, under the general definitions for "mine" (A.R.S. § 27–301(3)) and "open pit" (A.R.S. § 27–301(5)), appellee would be engaged in the activity of mining. We therefore find that there are substantial facts in the record supporting the finding that appellee was engaged in mining.

Nevertheless, appellants maintain that the appellee is not the *entity* entitled to the mining exemption. Appellants' argument is basically one of legislative intent, and can be stated as follows: *First*, exemption statutes are strictly construed against the exemption and in favor of the tax, *Tucson Transit Authority, Inc. v. Nelson*, 107 Ariz. 246, 485 P.2d 816 (1971). *Second*, the use tax (A.R.S. § 42–1401 et seq.) was enacted to complement the transaction privilege tax (A.R.S. § 42–1301 et seq.). *Third*, appellee's sole claim to the exemption is made pursuant to A.R.S. § 42–1409(B)(2), *supra*, (mining exemption). *Fourth*, the purpose of the use tax is to reduce or eliminate the advantage of purchasing products outside of the state and to promote local buying, while the exemptions are to encourage the development of certain types of business activity within the state. *Fifth*, certain amendments to both the transaction privilege tax and the use tax provided exemptions under the use tax where the business event was taxable under the transaction privilege tax,

such as: telephone and telegraph companies (§ 42–1409(B)(3)), airline and railroad companies (§ 42–1409(B)(6–7)), etc. *Sixth*, since the transaction privilege tax and the use tax are complementary in nature, and since the appellee was held by appellants to have been engaged in the rendition of personal service to the mining company, Ranchers, and was therefore exempt under the transaction privilege tax exemption, A.R.S. § 42–1312(A)(2), which exempts professional or personal service occupations, appellee cannot now turn around and claim to be engaged in the business of mining for the purpose of the use tax exemption, A.R.S. § 42–1409(B)(2), *supra*. Appellants state: "The simple reason for this is that Anderson cannot claim the direct benefits of an exemption intended to benefit an entity engaged in the business of mining, such as Ranchers, under A.R.S. § 42–1409(B)(2)." *Lastly*, appellants argue that this Court in *Meredith Corporation v. State Tax Commission*, 23 Ariz.App. 152, 531 P.2d 197 (1975), strictly construed the use tax exemption, involving A.R.S. § 42–1409(B)(3), limiting it to equipment used by telephone and telegraph companies, and they urge that this strict construction should likewise be applied here.

■ While there is some merit to appellants' argument, we remain unpersuaded. First, appellants tend to generalize their argument rather than deal with the specific statutory exemption involved in A.R.S. § 42–1409(B)(2). Second, appellants cite no direct Arizona authority in support of their concept. They cite instead a number of cases from other jurisdictions which may or may not have use tax exemptions similar to our A.R.S. § 42–1409(B)(2). No direct comparison is made between the statutes, however. Third, the persuasiveness of foreign decisions addressed to the issue of our legislature's intent in enacting our use tax is not great unless we adopted their statute. Fourth, in *Meredith Corporation v. State Tax Commission, supra*, we determined only that the legislature did not intend the "processing operation" exemption, granted by A.R.S. § 42–1409(B)(3) for transmission

equipment used by telephone and telegraph companies, to include the transmission of a television picture by electronic signals by a television company. We said that if the legislature "had intended such exemption, they would have said so." *Meredith* is an example of strict construction applied to a specific tax exemption. It must be underscored, however, that the decision is based on the intention of the legislature as revealed in the use tax statutes, and we did not in any way rely on the transaction privilege statutes to determine that intent.

It is necessary, as it was in *Meredith*, for us to review the use tax statutes and ascertain from them whether the legislature intended to grant the appellee a tax exemption.

The use tax is levied on a "person" by A.R.S. § 42–1408, which, in part, provides:

There is levied and imposed an excise tax on the storage, use or consumption in this state of tangible personal property purchased from a retailer on or after July 1, 1956 . . . . Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax. . . . [As amended Laws 1973, ch. 123, § 125 (Supp.1976)].

The term "person" is defined by § 42–1401(3) as meaning "individuals, firm, partnership, joint adventure, association, corporation, estate, trust, receiver, syndicate, this state, any county, city, municipality, district or other political subdivision or agency thereof." This definition certainly includes the appellee within its terms.

■ The mining exemption claimed by the appellee is found in A.R.S. § 42–1409(B)(2), *supra*, which exempts machinery or equipment used directly in the process of extracting ores or minerals from the earth for commercial purposes. This exemption includes equipment required to prepare the materials for extraction, as well as equipment used in open-pit mining. This exemption was enacted in 1967 (Laws 1967, 3rd Special Session, ch. 2, § 3). The Title to chapter 2 reads:

RELATING TO TAXATION; PRESCRIBING EXEMPTIONS TO THE TRANSACTION PRIVILEGE TAX AND THE USE TAX; AMENDING TITLE 42, CHAPTER 8, ARTICLE 1, ARIZONA REVISED STATUTES, BY ADDING SECTION 42–1312.01, AND AMENDING SECTIONS 42–1321 AND 42–1409, ARIZONA REVISED STATUTES.

Chapter 2 added the A.R.S. § 42–1409(B)(2) mining exemption. In the Act there is no legislative language addressing anything other than additional exemptions to the transaction privilege tax and the use tax. The title to the act, therefore, accurately describes the subject and matters covered and does not violate the requirements of article 4, part 2, § 13, Arizona Constitution, 1 A.R.S.

■ At this point we should consider appellants' argument that the determination of appellee's exemption under the transaction privilege tax controls the determination of exemption under the use tax. We have already noted the lack of Arizona authority to support their argument. Certainly our decision in *Meredith Corporation v. State Tax Commission, supra,* does not. Further, a close reading of chapter 2 does not support the appellants' argument because there is no language in the Act indicating a legislative intent that use tax exemptions be controlled by the transaction privilege tax determination of the taxable entity. While we have no doubt that, as a matter of good public fiscal policy, appellants' argument might be justified, we can find no such intention expressed in the Act to justify appellants' argument, and must therefore reject it.

In a recent case, *Duval Sierrita Corp. v. Arizona Department of Revenue,* 116 Ariz. 200, 568 P.2d 1098 (Ct.App. filed May 19, 1977), this Court was called on to review a use tax exemption claimed by Duval under A.R.S. § 42–1409(B)(1) and (2). We noted, in our opinion, that the public policy governing the use tax exemption for mining was to "encourage mining in this state so that the end products of that mining and

metallurgical activity (sale of copper) is itself subject to taxation under the transaction privilege tax." We went on to state:

We think it more logical that what the legislature intended by the use of the words "used directly" was to create a classification of personal property entitled to exemption from taxation, depending on its ultimate function in the mining or metallurgical processes. Such an interpretation is, in our opinion, more in keeping with the legislative purpose and avoids the administrative nightmare inherent in the Commission's interpretation. Applying this interpretation to the spare and replacement parts, it is almost conceded that their ultimate function would be part of "machinery or equipment used directly" in the mining and metallurgical operations of Duval which are exempt. We therefore hold that spare and replacement parts fall into the classification of property exempted by the legislature from use tax liability.

The Duval holding is applicable to the A.R.S. § 42–1409(B)(2) exemption involved here. This exemption, as we held in *Duval*, was intended by the legislature to create a classification of personal property entitled to exemption from use taxation, depending on its ultimate function in mining. As we have already held, the stipulation of facts settled the factual question of whether the appellee's scraper and two tractors were used directly in mining activity. We hold therefore that the appellee was entitled to claim the use tax exemption. The judgment of the trial court is affirmed.

DONOFRIO, J., concurs.

SCHROEDER, J., concurs in the result.