943 P.2d 769

**RENALWEST L.C., an Arizona limited liability company and successor in interest to Chandler Community Dialysis Center, Ltd., an Arizona corporation, Plaintiff–Appellee, Cross–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Defendant–Appellant, Cross–Appellee.**

No. 1 CA–TX 96–0003.

Court of Appeals of Arizona, Division 1, Department T.

Jan. 21, 1997.

Review Denied Sept. 16, 1997.

---

Grant Woods, Attorney General by James M. Susa, Assistant Attorney General, Phoenix, for Arizona Department of Revenue.

Quarles & Brady by Michael G. Galloway, Phoenix, for RenalWest L.C.

## OPINION

TOCI, Judge.

Arizona Department of Revenue ("DOR") appeals from a judgment of the Arizona Tax Court upholding a use tax exemption for RenalWest L.C.'s ("RenalWest") purchases of kidney dialysis machines and certain replacement parts as a "prosthetic appliance." RenalWest cross-appeals from the tax court's denial of the exemption for other items, claiming that such items fall within the definition of a prosthetic appliance because they are necessary to safe dialysis treatment.

Arizona Revised Statutes Annotated ("A.R.S.") section 42–1409(A)(17) (Supp.1996) provides a use tax exemption for "prosthetic appliances" prescribed or recommended by a physician, dentist or licensed health care professional. This appeal presents two issues: First, whether dialysis equipment qualifies as a prosthetic appliance pursuant to A.R.S. section 23–501(7)(1996); and, second, whether the exemption for prosthetic appliances granted by A.R.S. section 42–1409(A)(17) is available to a for profit corporation using dialysis equipment to treat patients with prescriptions for such treatment. We hold that dialysis equipment qualifies as a prosthetic appliance. Because the exemption requires only that the taxpayer use the prosthetic appliance pursuant to a doctor's prescription, RenalWest is entitled to the exemption. We therefore affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

RenalWest is an Arizona corporation that, for a fee, provides kidney dialysis treatment to patients whose doctors prescribe treatment. Dialysis is a mechanical and chemical process of removing accumulated metabolic waste from the human body. The process provides a substitute for human kidneys. In the dialysis process, the patient's blood is shunted from the body through a machine for diffusion and filtration and then returned to the patient's body. Dialysis is a complicated, integrated process that requires the use of machinery, parts, solutions, testing equipment and supplies.

From October 1, 1985 through December 31, 1989, RenalWest purchased dialysis equipment for use in its business. In 1990, DOR audited these purchases and assessed a $5,570.80 use tax on the untaxed purchases of $111,418.00. RenalWest protested the assessment and exhausted its administrative remedies.

The State Board of Tax Appeals held that purchases of dialysis machinery and replacement parts [1] were not subject to the use tax because they were exempt prosthetic appliances pursuant to A.R.S. section 42–1409(A)(17). It found, however, that other elements, equipment, solutions, and supplies used in the dialysis process,[2] were taxable. Both DOR and RenalWest appealed to the tax court.

The tax court upheld these findings.[3] It also awarded $20,000.00 in attorneys' fees, and $4,502.64 in costs to RenalWest. DOR now appeals to this court, claiming that because RenalWest itself did not have a prescription for dialysis treatment, the tax court erred in exempting RenalWest's dialysis equipment and replacement parts. RenalWest cross-appeals, asserting that the solutions, testing equipment, and supplies used in the dialysis process were also exempt.

## II. DISCUSSION

### A. Use Tax Exemption for Prosthetic Appliances

DOR argues that kidney dialysis machines are not exempt prosthetic appliances pursu-

---

1. Items 1 through 53 in the trial court exhibit.

2. Items 54 through 103 in the trial court exhibit.

3. Apparently, the tax court omitted from exemption two items that the Board of Tax Appeals had included in its judgment as exempt.

ant to A.R.S. section 42–1409(A)(17), unless the taxpayers claiming use tax exemptions have prescriptions for the prosthetic appliances. RenalWest contends that all dialysis treatment it provides is prescribed by a doctor. Therefore, when RenalWest buys and uses dialysis equipment, it is buying and using a prosthetic device prescribed by a doctor. RenalWest also asserts that all items essential to dialysis treatment are prosthetic appliances and are therefore exempt. We agree with RenalWest.

The use tax is "an excise tax on the . . . use or consumption in this state of tangible personal property purchased from a retailer, as a percentage of the sales price." A.R.S. § 42–1408(A) (Supp.1996). Exemptions from the use tax are listed in A.R.S. section 42–1409. It provides:

A. The tax levied by this article does not apply to the storage, *use* or consumption in this state of the following described tangible personal property:

17. Prosthetic appliances, as defined in § 23–501, prescribed or recommended by a person who is licensed, registered or otherwise professionally credentialed as a physician. . . .

 The interpretation of a statute is a question of law that we review *de novo*. *Libra Group v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991). Although we strictly construe tax exemptions, we will not deny lawful exemptions. *Maricopa County v. North Phoenix Baptist Church*, 2 Ariz. App. 418, 423, 409 P.2d 577, 582 (1966). Therefore, RenalWest is entitled to an exemption for items it uses if the items are both "prescribed by a physician" and "prosthetic appliances." For the purpose of determining whether the language, "prescribed by a physician" in A.R.S. section 42–1409(A)(17) requires that RenalWest itself hold a prescription for dialysis, we assume that dialysis equipment is a prosthetic appliance. Our discussion of the latter issue appears in subparagraph 2.

1. "Prescribed by a Physician" in A.R.S. Section 42–1409(A)(17)

 The tax court properly exempted RenalWest's purchases from the use tax even though it did not have a doctor's prescription or recommendation to purchase a prosthetic appliance. Generally, we give statutes their "obvious and natural meaning." *Odle v. Shamrock Dairy of Phoenix*, 7 Ariz.App. 515, 518, 441 P.2d 550, 553 (1968). Here, the statutory exemption requires that a taxpayer *use* prosthetic appliances prescribed or recommended by a physician. Nothing in the exemption requires the taxpayer to *purchase* the appliance pursuant to that prescription. RenalWest complied with the statute when it used a prosthetic appliance, the kidney dialysis machine, to treat only those patients whose doctors prescribed dialysis.

Moreover, the statutory language defines the *type* of appliances exempt from tax, rather than *who* receives the exemption. For example, it precludes exemptions for non-prescription prosthetic appliances such as hairpieces and certain hearing aids. The statute does not, however, deprive taxpayers like RenalWest of the exemption merely because a doctor has not issued a prescription to RenalWest. *See State Tax Comm'n v. Anderson Dev. Corp.*, 117 Ariz. 555, 574 P.2d 43 (App.1977) (use tax exemption for mining allowed for contractor performing mining work for a mining operator).

As the record indicates, RenalWest patients, like most dialysis patients, do not individually purchase dialysis equipment, even if they receive treatment at home. Dialysis equipment costs over $20,000.00 and its use requires monitoring to avoid fatalities. To qualify for Medicare coverage patients must receive treatment in a dialysis facility. From a practical standpoint, because the ordinary patient does not purchase dialysis equipment, the only purchasers of dialysis equipment that could benefit from the prosthetic appliance exemption are treatment centers.

DOR argues that we must construe statutes adopted at the same time "as a whole." *See Bank of Lowell v. Cox*, 35 Ariz. 403, 413, 279 P. 257, 261 (1929). It claims that concurrently enacted exemptions, like A.R.S. section 42–1409(A)(18) (Supp.1996), that exempt prescription eyeglasses and contact lenses, illustrate the legislative intent that taxpayers

who claim exemptions pursuant to A.R.S. section 42–1409(A)(17) must hold a prescription for the purchase of a prosthetic appliance. We disagree. The individuals holding those prescriptions routinely directly purchase such items for their own personal use. In contrast, dialysis centers, rather than individual patients, routinely purchase the prosthetic appliance at issue here. Furthermore, had the legislature so intended, it could have simply limited the exemption to "prosthetic appliances that a *patient purchases pursuant to a doctor's prescription or recommendation.*" Instead, the legislature provided an exemption for the use of "prosthetic appliances ... prescribed or recommended by a ... physician." RenalWest's dialysis machine clearly meets this definition.

DOR also contends that the legislature did not intend to provide exemptions to "for-profit" institutions like RenalWest, because A.R.S. section 42–1409(A)(13)(c) (Supp.1996), enacted one year after A.R.S. section 42–1409(A)(17), exempts tangible personal property purchased by "not-for-profit" kidney dialysis centers. DOR argues that only A.R.S. section 42–1409(A)(13)(c) exempts dialysis equipment, reasoning that if A.R.S. section 42–1409(A)(17) provides an exemption for dialysis equipment, A.R.S. section 42–1409(A)(13)(c) would be redundant. *See State v. Edwards,* 103 Ariz. 487, 446 P.2d 1 (1968) (presumption is that legislature does not intend to enact redundant laws). We disagree.

Unlike A.R.S. section 42–1409(A)(17), A.R.S. section 42–1409(A)(13)(c) exempts *all* tangible personal property of a nonprofit licensed kidney dialysis center, not just prosthetic appliances. Furthermore, unlike the statute at issue here, A.R.S. section 42–1409(A)(13)(c) does not limit the exemption by requiring a prescription. Because A.R.S. section 42–1409(A)(17) only exempts prosthetic appliances that are used pursuant to a prescription, A.R.S. section 42–1409(A)(13)(c), exempting all tangible personal property that non-profit institutions use, is not redundant.

DOR cites Arizona Administrative Code R15–5–1819 (renumbered and amended 1993 (Supp. 93–3 as R15–5–156)), and R15–5–2330 (renumbered and amended Sept. 29, 1993 (Supp.93–3) as R15–5–2343) to support its position. The version of R15–5–2330 in effect from 1985–1989 provided an exemption for "[a]rtificial devices necessary to support or take the place of a part of the human body if prescribed or recommended by a physician." According to DOR, the regulations require that RenalWest hold a physician's prescription for the purchase of the dialysis machine to qualify for the exemption.

For the following reasons, we disagree. First, R15–5–1819 applies to the transaction privilege tax, not the use tax at issue here. Furthermore, although R15–5–2330 applies here, it does not specifically require that the taxpayer hold a prescription to claim the exemption. Instead, the regulation merely restates A.R.S. section 42–1409(A)(17). Additionally, in 1993 DOR amended R15–5–2330 to provide:

> If a prescription or recommendation is required to purchase the tangible personal property, the required prescription or recommendation shall be in writing and maintained as part of the vendor's records. R15–5–2343(D).

If, before amendment, R15–5–2330 had required taxpayers claiming the exemption to hold a prescription, DOR would not have needed to amend R15–5–2330 (R15–5–2343(D)) to so provide.[4]

■ DOR also cites an Audit Area Guide providing that for profit institutions may not deduct from their sales or use tax base kidney dialysis machines purchased to provide dialysis to patients with prescriptions. The guide states that prosthetic appliances are exempt only when the actual device becomes the property of the person to whom it was prescribed. We find the audit area guide unpersuasive. First, it was issued in February 1995, after DOR amended R15–5–2330 to require that vendors maintain written records of prescriptions. Furthermore, when

---

4. Because RenalWest purchased the taxed items between 1985 and 1989, R15–5–2330, and not its amended version, applies.

an agency interprets the law, we may draw our own legal conclusions and determine whether its interpretation is correct. *See Eshelman v. Blubaum,* 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977); *see also Maldonado v. Department of Economic Sec.,* 182 Ariz. 476, 478, 897 P.2d 1362, 1364 (App. 1994) (court can strike down administrative agency's interpretation of its own rule when it defeats a statute's purpose). The obvious and natural meaning of A.R.S. section 42–1409(A)(17) exempts taxpayer use of prosthetic appliances prescribed by a physician. Thus, even though RenalWest was not a patient who purchased the appliance pursuant to a doctor's prescription, it is entitled to the exemption for items constituting prosthetic appliances.

### 2. Prosthetic Appliances Covered in A.R.S. Section 42–1409(A)(17)

■ The tax court exempted only Items 1 through 53, which it classified as dialysis machinery and equipment. RenalWest also claimed exemptions for solutions, testing equipment, and supplies used in the dialysis process.[5] We agree with RenalWest that these items are exempt. Because dialysis is an integrated process, and these items are necessary to safely perform the procedure, Items 1 through 103 constitute a prosthetic appliance pursuant to A.R.S. section 23–501(7).

We have not found any Arizona cases interpreting the meaning of prosthetic appliances, and therefore interpret the statute according to its plain and ordinary meaning. *Department of Revenue v. Cyprus Sierrita Corp.,* 177 Ariz. 301, 303, 867 P.2d 871, 873 (Tax Ct.1994) (chemicals meet the definition

of "machine" because they were an "integral part of a complicated process"). A prosthetic appliance is an "artificial device necessary to support or take the place of a part of the body." A.R.S. § 23–501(7). A "device" is a "mechanism designed to serve a special purpose or perform a special function." Webster's Ninth New Collegiate Dictionary 347, 737 (1987) ("mechanism" is a "process or technique for achieving a result").

The parties agree that dialysis is a "complicated, integrated process requiring solutions, testing equipment and supplies." Both an experienced nephrologist and nurse testified that Items 1 through 103 are essential to safe dialysis. As such, they constitute devices. These devices are necessary substitutes for failed kidneys. Thus, Items 1 thorough 103 in their entirety constitute a prosthetic appliance. *See also Department of Revenue v. Sonee Heat Treating,* 178 Ariz. 278, 279, 872 P.2d 682, 683 (1994); *Duval Sierrita Corp. v. Department of Revenue,* 116 Ariz. 200, 205, 568 P.2d 1098, 1103 (App. 1977) (broadly interpreting "used directly" in operations to provide exemption for items necessary and essential to operation at issue).

### B. Attorneys' Fees

■ RenalWest applied for $42,011.00 in attorneys' fees and $4,502.64 in costs pursuant to A.R.S. section 12–348(A) (1992), which provides:

> [A] court *shall* award fees and other expenses to any party other than this state or a city . . . which prevails by an adjudication on the merits in any of the following:
>
> . . . .

---

5. Both a nurse and nephrologist testified that machine replacement parts and add-on modules, (Items 1–56), make the dialysis machine operate safely and prevent potential risks to patients. Dialyzers, (Items 57–59), clean the blood. Blood lines, (Items 60–67), enable blood to get to the dialyzer and return to the body. Clamps, (Items 68–71), control bleeding and allow the blood to clot after the procedure. A filter used in the course of water treatment, (Item 72), makes the water safe for direct contact with a patient's blood. Dialysate concentrate, (Items 73–77), regulates the process, cleansing the blood and replacing certain minerals removed during dialysis. Water and dialysis testing equipment, (Items

78–88), monitor the water used in treatment for contaminants because contaminated water may cause adverse effects, including death. Blood pressure monitoring equipment, (Items 89–91), provides the primary method for monitoring patients during treatment. A safety analyzer, (Item 92), guards against electrical leaks in the machine components. Dialysate testing supplies, (Items 93–94), sterilize the machine. Equipment disinfectant, (Items 95–100), sterilizes items exposed to the patient's blood. Water treatment disinfectant, (Items 101–103), removes bacterial contamination from the water used in the dialysis process.

2. A court proceeding to review a state agency decision, pursuant to [judicial review of administrative decisions] of this title, or any other statute authorizing judicial review of agency decisions.

. . . .

(formerly A.R.S. § 12–348(A)(3) (emphasis added)).

■ Pursuant to this statute, awards against the state are unlimited provided they do not exceed $75.00 per hour, plus necessary cost of living adjustments. *See* A.R.S. § 12–348(E)(2)(1992). The tax court properly awarded costs of $4,502.64 and fees of $20,000.00 pursuant to A.R.S. section 12–348(B), which provides:

> [A] court *may* award fees and other expenses to any party, other than this state . . . which prevails by an adjudication on the merits in an action brought by the party against this state . . . challenging the assessment or collection of taxes.

(Emphasis added.) *See* A.R.S. § 12–348(E)(5) (limiting fees awarded under § 12–348(B) to $20,000.00).

■ The dispute regarding which statutory subsection applies to tax appeal cases arises from the 1990 revision of A.R.S. section 12–348. When the legislature changes a statute, we presume it intended to change the law. *Brousseau v. Fitzgerald,* 138 Ariz. 453, 455, 675 P.2d 713, 715 (1984). We may use the context, language, history, spirit, and purpose of a statute to determine the legislature's intent. *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).

Prior to the revision, section 12–348(A) required courts to award fees to any prevailing party that brought a civil action against the state to challenge a tax assessment. *Inspiration Consol. Copper Co. v. Arizona Dep't of Revenue,* 147 Ariz. 216, 231, 709 P.2d 573, 588 (App.1985) (citing A.R.S. § 12–348 prior to revision). The legislature deleted that section. Although the current version still requires courts to award fees, it no longer provides for such awards in tax cases. A.R.S. § 12–348(A).

The legislature also amended A.R.S. section 12–348(B), providing exceptions to awards in subsection A. *Mountain States*

*Tel. v. Corporation Comm'n,* 160 Ariz. 350, 361, 773 P.2d 455, 466 (1989) (Feldman, J., supplemental opinion). The amendment to subsection B omitted *mandatory* fee awards to prevailing taxpayers, and replaced them with discretionary ones. *Wilderness World, Inc. v. Department of Revenue,* 182 Ariz. 196, 202, 895 P.2d 108, 114 (1995). Subsection B, unlike subsection A, specifically addresses awards in tax cases. Thus, by replacing mandatory awards in tax cases with discretionary ones, the legislature intended to limit fees in tax cases. *Id.; see City of Phoenix v. Paper Distrib. of Arizona,* 186 Ariz. 564, 565–69, 925 P.2d 705, 706–09 (App.1996) (analyzing statutory changes). As a result, A.R.S. section 12–348(B) applies to this case.

The cases cited by RenalWest in support of its claim for attorneys' fees under A.R.S. section 12–348(A)(2) are not authoritative. *See Inspiration,* 147 Ariz. 216, 709 P.2d 573; *Stewart Title & Trust v. Pima County,* 156 Ariz. 236, 751 P.2d 552 (App.1987). These cases were decided before the statute was amended. Furthermore, although courts have made awards pursuant to A.R.S. section 12–348(A)(2), *see Southwest Ambulance, Inc. v. Arizona Dep't of Health Serv.,* 183 Ariz. 258, 902 P.2d 1362 (App.1995); *MVC Constr. v. Treadway,* 182 Ariz. 615, 898 P.2d 993 (App.1995), courts deciding tax appeals rely exclusively on 12–348(B). *Paper Distrib. of Arizona,* 186 Ariz. at 566–69, 925 P.2d at 707–09; *see State ex rel. Arizona Dep't of Revenue v. Driggs,* 189 Ariz. 74, 938 P.2d 469 (App.1996); *Turf Paradise, Inc. v. Maricopa County,* 179 Ariz. 337, 342–43, 878 P.2d 1375, 1380–81 (App.1994). Finally, we note that although one court applied A.R.S. section 12–348(A) to a tax case, the court relied on a decision interpreting that statute prior to its revision. In *Larkin v. State ex rel. Rottas,* 175 Ariz. 417, 429, 857 P.2d 1271, 1283 (App. 1992) (relying on *Lincoln Fosseat Assoc. v. Arizona Dep't of Revenue,* 167 Ariz. 36, 38, 804 P.2d 765, 767 (App.1990)), the court based the award on former A.R.S. section 12–348(A)(2). That statute provided, "a party who prevails on the merits against the state in an action challenging the assessment or collection of taxes is entitled to an award of fees and other expenses."

We conclude, therefore, that as a result of the 1990 revision, only A.R.S. section 12–348(B) applies to fee awards in tax cases.

### III. CONCLUSION

Based on the foregoing, we affirm the tax court's determination that a prescription is not required to obtain the exemption in A.R.S. section 42–1409(A)(17). We hold, however, that Items 1 through 103 constitute "prosthetic appliances," and as a result are exempt from taxation pursuant to that section. We also affirm the tax court's award of attorneys' fees pursuant to A.R.S. section 12–348(B).

GARBARINO, P.J., and WEISBERG, J., concur.