NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VHS ACQUISITION SUBSIDIARY NUMBER 1 INC, *Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellant*.

No. 1 CA-TX 20-0007
FILED 5-4-2021

Appeal from the Arizona Tax Court
No. TX2018-000277
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Benjamin H. Updike, Nancy K. Case
*Counsel for Plaintiff/Appellee*

Ryan Rapp Underwood & Pacheco, P.L.C., Phoenix
By Michael G. Galloway, Ian A. Macpherson
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

¶1 The Arizona Department of Revenue (the "Department") seeks reversal of the Arizona Tax Court's decision granting a refund to VHS Acquisition Subsidiary Number 1, Inc. ("VHS") for certain items under A.R.S. § 42-5159(A)(17). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 VHS, a medical provider, purchased various items from out-of-state vendors. Then doing business as "Paradise Valley Hospital," VHS sought a refund of use tax paid for the items. The Department initially granted the refund for some items but declined others. After an informal conference, the Department gave more requested refunds, and VHS withdrew some of the refund claims. The parties disputed the remainder of the property before the Office of Administrative Hearings ("OAH").

¶3 Before the OAH, VHS argued that the items were exempt from the use tax under A.R.S. § 42-5159(A)(17) because they were prosthetic appliances as defined by A.R.S. § 23-501(7). During the hearing, an expert witness testified about the items' functions. The hearing officer ruled in favor of the Department concerning all but one item.

¶4 VHS appealed to the tax court under A.R.S. § 42-1254(C). VHS moved for summary judgment, arguing that the items are exempt prosthetic appliances under the statute. In a cross-motion, the Department claimed that VHS relied on an overbroad reading of A.R.S. § 23-501(7). The tax court agreed with VHS that the items are prosthetic appliances under A.R.S. § 23-501(7), granted VHS's motion, denied the Department's cross-motion, and awarded VHS the subject refund, attorney's fees, and costs. The Department appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), -170(C), and 42-1254(D)(4).

## DISCUSSION

**¶5**        We review the tax court's grant of summary judgment *de novo*. *Rigel Corp. v. State*, 225 Ariz. 65, 67, ¶ 11 (App. 2010). We review the facts in a light most favorable to the losing party. *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 191 (App. 1994). A court should grant summary judgment only if it finds no genuine issues of material fact and that one party is entitled to judgment as a matter of law. *Grain Dealers Mut. Ins. v. James*, 118 Ariz. 116, 118 (1978). Summary judgment is inappropriate if the facts, even if undisputed, would allow reasonable minds to differ. *Nelson*, 181 Ariz. at 191. We strictly construe tax exemptions to further the policy that all taxpayers must share the burden of taxation, but not so as to defeat the legislative purpose. *State ex rel. ADOR v. Cap. Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10 (2004).

**¶6**        The use tax is "an excise tax on the storage, use or consumption in this state of tangible personal property purchased from a retailer or utility business[.]" A.R.S. § 42-5155(A). Tangible personal property purchased and brought into this state is presumed to be purchased for storage, use, or consumption. A.R.S. § 42-5152. The parties do not dispute that the items are subject to Arizona's use tax absent an exemption. The only question before this court is whether VHS's items are prosthetic appliances as defined in A.R.S. § 23-501(7) and, therefore, exempt under A.R.S. § 42-5159(A)(17).

**¶7**        The Department maintains that (1) VHS's items are not prosthetic appliances because they are surgical supplies, which fall under a different statutory category; (2) the integrated process analysis announced in *RenalWest L.C. v. ADOR,* 189 Ariz. 409 (App. 1997), does not apply to the items and thus cannot support a conclusion that they are prosthetic appliances; and (3) the tax court's interpretation of A.R.S. § 23-501(7) conflicts with the legislature's policy of providing a broad exemption for the purchases of such materials only to non-profit hospitals. We address each argument in turn.

**A.      Under the Plain Meaning of A.R.S. § 23-501(7), Adhesive Skin Closures, Liquid Skin Adhesives, Absorbatacks, Bone Wax, Surgical Clips, Ligature Loops, Staples, and Sutures Are Prosthetic Appliances.**

**¶8**        The Department claims the definition of "prosthetic appliance" in A.R.S. § 23-501(7) must, for context, be read in accordance with the definition of "physical restoration" contained in A.R.S.

§ 23-501(6).[1] The definition of physical restoration lists separately "medical and surgical supplies" and "prosthetic appliances." *Id.* The Department concludes that courts must read statutes to avoid superfluous language, claiming that we must infer that "medical and surgical supplies" differs from "prosthetic appliances."

¶9        VHS argues that we need not consider the Department's argument regarding A.R.S. § 23-501(6) because the court in *RenalWest* interpreted and applied "prosthetic appliance" under A.R.S. § 23-501(7) without consulting other definitions listed in A.R.S. § 23-501. Because we conclude the plain language of A.R.S. § 23-501(7) is not ambiguous, we examine A.R.S. § 42-5159(A)(17)'s incorporation of A.R.S. § 23-501(7) without resort to other statutory interpretation methods.[2]

¶10        When construing a tax statute, we give words their plain and ordinary meaning. *Wilderness World, Inc. v. ADOR*, 182 Ariz. 196, 198 (1995). If the statute is unambiguous, we apply it as written without further

---

[1]        A.R.S. § 23-501 provides:

In this article, unless the context otherwise requires:

*        *        *

6.        "Physical restoration" means medical, surgical or therapeutic treatment necessary to correct or reduce the employment disadvantage of a person with a disability and includes medical, psychiatric, dental and surgical treatment, nursing service, hospital care not to exceed ninety days, convalescent home care, drugs, medical and surgical supplies and prosthetic appliances and other related services as defined in the vocational rehabilitation act, as amended.

7.        "Prosthetic appliance" means an artificial device necessary to support or take the place of a part of the body, or to increase the acuity of a sense organ.

[2]        VHS also argues that we should not consider the Department's argument regarding A.R.S. § 23-501(6) because it should have been raised below and is insufficiently related to A.R.S. § 42-5159(A)(17) to inform its construction. Because we reject the Department's statutory construction on the grounds that the plain language of A.R.S. § 42-5159(A)(17) and A.R.S. § 23-501(7) are unambiguous, we do not address these alternative arguments.

analysis. *City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 238, ¶ 10 (2019). We construe a statutory provision as a part of the whole statute and may find guidance in statutes that are "of the same subject or general purpose." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017). We give effect to all provisions involved. *Id.* But "[o]ur primary goal is to effectuate the legislature's intent." *Id.* (quoting *Wade v. Ariz. St. Ret. Sys.*, 241 Ariz 559, 561, ¶ 10 (2017)). Thus, if there is only one reasonable interpretation, "we apply it without further analysis." *Id.*; *City of Mesa v. Killingsworth*, 96 Ariz. 290, 294 (1964) ("[O]nly where the statute is ambiguous are courts at liberty to construe the language used.").

**¶11**         A.R.S. § 42-5159(A)(17) exempts prosthetic appliances, "as defined in A.R.S. § 23-501." A.R.S. § 23-501(7) defines prosthetic appliances as "an artificial device necessary to support . . . a part of the body." This court has previously defined a "device" as a "mechanism designed to serve a special purpose or perform a special function," then defined a "mechanism" as a "process or technique for achieving a result." *RenalWest*, 189 Ariz. at 414 (quoting Webster's Ninth New Collegiate Dictionary 347, 737 (1987)).

**¶12**         The items at issue here fit unambiguously within the definition of A.R.S. § 23-501(7) as they support a part of the body.

**¶13**         Adhesive skin closures are adhesive strips of varying sizes. They treat wounds by holding the skin shut while fitting its edges together. By facilitating wound closure, they support the integumentary system of the skin. They are necessary to restore the integrity of the skin because, without them, the patient would lose more fluids and face a greater risk of infection.

**¶14**         Liquid skin adhesives are waterproof sealants that hold skin edges together. Like adhesive skin closures, they support the skin by providing tensile strength between the edges of the skin wound and thereby facilitate healing.

**¶15**         AbsorbaTacks and hernia mesh[3] function as a unit. Hernias are or result from splits in the fascia that can release the peritoneum and abdominal contents. Hernia mesh replaces this facia, and AbsorbaTacks are small bioabsorbable screws that fit through hernia mesh. AbsorbaTacks fix

---

[3]     The Department conceded that hernia mesh is a prosthetic appliance.

the hernia mesh to the skin and subcutaneous tissue while the body heals and permanently positions the mesh. They are necessary to secure the mesh in a minimally invasive way.

¶16        Bone wax is a material placed over damaged and exposed bone to prevent bleeding and bone overgrowth. Unlike other types of tissue, the blood vessels inside bone cannot contract, and the bone cannot reduce bleeding on its own. As such, bone wax is a necessary application to prevent blood loss. The wax supports the bone by preventing bleeding and replacing the cortical bone.

¶17        Surgical clips vary in size but may be used to close parts of the vascular system, the bowel, and other tissue to prevent bleeding or leakage. They are often used in organ removal surgery. Clips support the body by sealing tissue so that its contents do not leak. Clips are necessary because they allow for a safe, quick, and minimally invasive method of sealing off tissue.

¶18        Ligature loops are narrow, cannulated devices with suture loops placed through laparoscopic portals to tie and thereby seal tissue sections. They are like clips but encircle and tie the tissue rather than clipping it.

¶19        Staples also function similarly to clips but are preferentially used for specific procedures, including bariatric procedures and, depending on the location and size of the wound, closure of skin.

¶20        Sutures facilitate healing by holding together various parts of the body, including skin, subcutaneous tissue, tendons, ligaments, and muscle. By holding damaged tissue together, they support the integrity of the tissue and the healing process. They are essential to various types of tissue repair.

¶21        Because the above items are necessary components of particular processes that support the body, all of them fit within the definition of prosthetic appliances under A.R.S. § 23-501(7) and are thus exempt under A.R.S. § 42-5159(A)(17). The Department argues that if we give the statute its plain reading, all surgical supplies would arguably qualify as prosthetic appliances. However, it is a legislative function to define terms and phrases if they have a specific meaning. *See State v. Wagstaff*, 164 Ariz. 485, 490 (1990) ("Our ability to interpret a statute's meaning or rectify statutory infirmities by construing the language to achieve a perceived legislative goal, however, is limited by the constitutionally decreed separation of powers that prohibits this Court

from enacting legislation or redrafting defective statutes."). Here, the legislature adopted a broad definition for prosthetic appliances. It is not the court's function to limit that definition by adding exclusions such as "surgical supplies" to achieve the Department's goals.

**B.      Preloaded Mesh Fixation, Clip Appliers, Staplers, Suture Devices, Pens, and Ampules Are Prosthetic Appliances Because They Are Parts of the Same Integrated Processes as Other Prosthetic Appliances.**

¶22        The remaining disputed items, which are devices or other equipment used to apply some of the above items, do not directly support a part of the body. Thus, the issue is whether the remaining contested items function as prosthetic appliances by taking part in the same processes and consequently qualify for the statutory exemption.

¶23        In *RenalWest*, a taxpayer who provided kidney dialysis treatment sought an exemption for a dialysis machine and related equipment and supplies from the use tax under A.R.S. § 42-1409(A)(17) (renumbered as A.R.S. § 42-5159(A)(17)). 189 Ariz. at 411. The tax court exempted "dialysis machinery and equipment" but not "solutions, testing equipment, and supplies used in the dialysis process." *Id.* at 414. On appeal, we considered whether the items were prosthetic appliances under A.R.S. § 23-501. *Id.* These items included clamps that controlled the bleeding and promoted blood clots after the dialysis procedure, a filter used to clean water that would contact the patient's blood, and equipment used to sterilize the machinery. *Id.* at 414, n.5. This court noted that dialysis is an "integrated process" that substituted for the kidney by removing waste from the patient's blood. *Id.* at 411, 414. Because dialysis is an integrated process and the equipment and supplies were necessary to perform it safely, this court reversed the tax court. It held that the items constituted prosthetic appliances. *Id.* at 414.

¶24        *RenalWest* dealt with a "complicated, integrated process" of kidney dialysis, so it relied by analogy on an application of the law used for mining operations. 189 Ariz. at 414 (citing to *Duval Sierrita Corp. v. ADOR*, 116 Ariz. 200, 206–07 (App. 1977) (determining whether machinery and equipment were "used directly" under § 42-1409(B)(1), (2) (renumbered as § 42-5159(B)(1), (2)) in a mining operation, and inquiring, *inter alia*, whether "the disputed item operate[s] harmoniously with the admittedly exempt machinery to make an integrated synchronized system")). But central to the holding was that essential parts of a prosthetic process are prosthetic appliances. *RenalWest*, 189 Ariz. at 414 ("Both an experienced nephrologist

and nurse testified that [the items] are essential to safe dialysis. As such, they constitute devices. These devices are necessary substitutes for failed kidneys.").

**¶25**          Here, the items that are not by themselves prosthetic appliances are necessary to the safe application of the appliances.

**¶26**          Preloaded mesh fixation devices apply AbsorbaTacks to the mesh. They allow for a less invasive means of attaching the AbsorbaTacks to the mesh while fixing the mesh in the proper position.

**¶27**          Clip appliers, not surprisingly, apply surgical clips, which cannot be safely placed manually. Without clip appliers, surgeons would need to resort to other, less effective methods of sealing tissue.

**¶28**          Staplers apply surgical-wound staples and close the tissue where the staple attaches.

**¶29**          Suture devices apply sutures. Although there may be different ways to use sutures, specific devices are necessary to maximize the likelihood that they function as intended.

**¶30**          Liquid skin adhesives must be applied by ampules and can also be employed by pens. Although liquid skin adhesives may be used without pens so long as ampules are available, the pens facilitate an even application of the adhesive.

**¶31**          Because each of the above items is necessary to apply prosthetic appliances, they are also prosthetic appliances and are exempt under A.R.S. § 42-5159(A)(17).

## C.          A.R.S. § 42-5159(A)(17) Does Not Influence Our Reading of A.R.S. § 42-5159(A)(13)(a)–(f).

**¶32**          The Department argues that the tax court's reading of A.R.S. § 42-5159(A)(17) is contrary to our legislature's intent to create broad exemptions only for certain qualifying institutions such as non-profit hospitals under A.R.S. § 42-5159(A)(13)(a)–(f). But the legislature's broad exemptions for these institutions include various categories of tangible personal property. *See* A.R.S. § 42-5159(A)(13). These exemptions significantly exceed the bounds of A.R.S. § 42-5159(A)(17)'s requirement that prosthetic appliances be proscribed or recommended by certain licensed health professionals. Thus, comparing the two is not persuasive.

**CONCLUSION**

¶**33**        We affirm the tax court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA