In re SILVERNAIL MIRROR AND GLASS, INC., Debtor.

**Bankruptcy No. 85–3686–8P7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 29, 1992.

Neil G. Kiefer, St. Petersburg, Fla., for debtor.

Tambay Trustee, Inc., Tampa, Fla.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIM NUMBER # 44 OF CAPITAL RECOVERY CORP.

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing with proper notice upon the Trustee's Objection to Claim # 44 of Capital Recovery Corporation (Capital Recovery), as assignee of the FDIC. The Court has considered the Objection, together with the record, and finds that the Objection is well taken and should be sustained for the following reasons:

The record reveals that prepetition, the Debtor entered into a subcontract on a bonded job to install glass windows in a building in Jacksonville, Florida. As the Debtor did not receive payment in full for services performed and materials supplied, it filed suit against the bonding company to collect on the payment and performance bond posted by the bonding company. After this case was converted to a Chapter 7 liquidation, the Trustee entered into a settlement of the suit against the bonding company, which was ultimately approved by this Court. According to the terms of the settlement, the bonding company paid $45,000.00 to the estate. These funds are currently held by the Trustee.

On July 21, 1986, the FDIC filed a secured Proof of Claim (Claim # 44) in this case in the amount of $654,901.53 based on a Promissory Note and Security Agreement entered into between the Debtor and Park Bank of Florida (Park Bank), a failed banking institution which was taken over by the FDIC. The proof of claim filed referred to a Security Agreement in which the Debtor pledged as collateral to Park Bank all of its furniture, furnishings, fixtures, inventory, leasehold improvements and equipment. The security interest granted included the proceeds of the collateral pledged. The Debtor also executed a collateral assignment to Park Bank of a lease, life insurance policies, and general intangibles. The UCC–1 Financing Statement filed by Park Bank with the Office of the Secretary of State and attached to the proof of claim described all of the same collateral listed above.

October 20, 1986, the FDIC filed with the Office of the Secretary of State a UCC–3 Termination Statement which states that the "Secured party no longer claims a security interest under the Financing Statement bearing file number shown above." The FDIC subsequently executed an unconditional assignment of Claim # 44 to Capital Recovery and filed the assignment on September 16, 1991. It should be noted that the Trustee had previously abandoned all furniture, furnishings, fixtures, inventory, leasehold improvements, equipment, automobiles and office equipment of the Debtor.

The Objection filed by the Trustee is based on the contention that the filing of the UCC–3 Termination Statement nullified all rights previously granted to Park Bank or, in the alternative, that even if they were not terminated, the Trustee did not administer any property to which Park Bank's security interest would attach. It is the Trustee's contention that the funds resulting from the settlement of the claim against the bonding company arise from an account of the Debtor. The Trustee therefore urges that the funds are proceeds of an account of the Debtor, and as Park Bank's Security Agreement and Financing Statement did not include accounts, Capital Recovery does not have a secured claim in the settlement funds.

Capital Recovery contends that it is a secured party based on the perfected UCC–1 Financing Statement which included general intangibles, and that the UCC–3 Termination Statement was intended only to terminate Park Bank's interest in tangible personal property which was subsequently abandoned by the Trustee. According to Capital Recovery, the funds in the hands of the Trustee are the proceeds of a general intangible of the Debtor, that is the settlement of the Debtor's suit against the bonding company.

■ Thus, the threshold issue in resolving this matter is whether Park Bank ever had a security interest in the funds collected by the Trustee. To resolve this question, this Court must determine whether the funds are proceeds of an account, as urged by the Trustee, or a general intangible, as urged by Capital Recovery. *Fla. Stat.* § 679.106 defines an account as "any right to payment for goods sold ... or for services rendered" and a general intangible as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." Although the Debtor's right to payment from the contractor for services rendered was clearly an account, the Debtor's claim against the bonding company was not. It was a chose in action to recover under the payment and performance bond posted by the bonding company. The clear language of *Fla.Stat.* § 679.106 dictates that choses in action are considered

general intangibles for purposes of secured transactions. Therefore, this Court is satisfied that the funds in the hands of the Trustee are proceeds of the Debtor's general intangible, which was covered by Park Bank's collateral assignment and perfected Financing Statement.

■ However, even though Park Bank's security interest extended to general intangibles and their proceeds, by virtue of the filing of the UCC–3 Termination Statement, Park Bank's interests in all collateral covered by the UCC–1 Financing Statement was extinguished. The UCC–3 Termination Statement did not specify which property would be affected by the release, either on the face of the agreement, or via an attachment, but merely stated that "secured party no longer claims a security interest under the [filed] Financing Statement," thereby releasing all of Park Bank's interests under the Financing Statement.

■ The Termination Statement gave all indications to the world that Park Bank was terminating its security interest in all its collateral. The filing of a Termination Statement is a method of making the record reflect the true state of affairs so that fewer inquiries will have to be made by persons who consult the public records. *Official Comment* to UCC § 9–406 (*Fla.Stat.* § 679.406). Therefore, even if the Termination Statement did not reflect the parties' true intent, it would be materially misleading to a potential creditor relying on the public records and therefore should not be set aside. *See In re Pacific Trencher and Equipment, Inc.,* 735 F.2d 362 (9th Cir.1984).

■ As noted by the Court in *In re Kitchin Equipment Co. of Virginia, Inc.,* 960 F.2d 1242 (4th Cir.1992), a court may apply equitable principles to reform a termination statement to relieve a party of a *minor* error. At least one court has set aside a termination statement filed by mistake. *See In re Burkhard,* 6 UCC 244 (Bankr.S.D.Ohio 1969). In this case, the filing of the Termination Statement was far from a minor error. The language of the Termination Statement unambiguously terminated Park Bank's security interest in

all its collateral, and there is no way to construe the Termination Statement as only a partial release. Moreover, Capital Recovery did not assert that the Termination Statement was filed in error until years after the litigation resulting in the settlement funds was commenced, forcing the Trustee to pursue a claim with no knowledge of Capital Recovery's alleged lien on the same.

For the reasons stated above, the Trustee's Objection should be sustained.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to Claim # 44 of Capital Recovery Corporation is hereby sustained and Claim # 44 is disallowed as a secured claim, but is allowed as an unsecured claim.

DONE AND ORDERED.