**In the Matter of METRO MOTOR SALES, INC., Debtor.**

**Bankruptcy No. 2–92–00076.**

United States Bankruptcy Court, D. Connecticut.

Oct. 18, 1993.

James F.B. Daniels, and Jay Selanders, Berman, DeLeve, Kuchan & Chapman, and James J. Perito, Susman, Duffy & Segaloff, P.C., New Haven, CT, for Chrysler Credit Corp.

John J. O'Neil, Jr., Francis, O'Neil & Del Piano, Hartford, CT, for trustee–respondent.

## MEMORANDUM OF DECISION AND ORDER ON MOTION FOR PAYMENT TO SECURED CREDITOR OF SETTLEMENT PROCEEDS

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The matter before the court is a motion by Chrysler Credit Corporation (movant) seeking an order that John J. O'Neil, Jr., trustee, remit to movant $26,000 which the trustee received from the settlement of two claims asserted by him against automobile franchisors concerning rights under two franchise agreements. The movant bases its entitlement to these monies as the party holding a prepetition security interest in the franchise agreements. The trustee denies the monies are proceeds of any of the movant's collateral. The parties have submitted the issue to the court solely by way of their memoranda of law.

### II.

Metro Motor Sales, Inc. (the debtor), the operator of a retail automobile sales business, filed a chapter 11 petition on January 10, 1992. The court converted the case to one under chapter 7 on May 28, 1992, when the debtor ceased operations. John J. O'Neil, Jr. became trustee of the debtor's estate. The debtor had conducted its business under a franchise agreement with Mazda Motor of America, Inc. (Mazda) and a franchise agreement with Chrysler Motors Corporation (Chrysler).

In February 1993, the trustee filed two motions pursuant to Fed.R.Bankr.P. 9019(a)[1] to compromise claims he held against Mazda and Chrysler. The motions, in effect, set forth that the trustee and each franchisor disagreed whether the trustee possessed his asserted right to assume and assign the franchise agreements; that Mazda had agreed to pay $18,000 and Chrysler had agreed to pay $8,000 to the debtor's estate in return for the trustee's terminating and releasing all his rights in and to the franchise agreements. The court, after notice and hearing, approved both motions, deferring a ruling on the issue of the movant's asserted entitlement to the settlement monies.

The movant, at all times concerned, held a perfected security interest in substantially all of the debtor's assets including "Contract Rights ..., General Intangibles ..., and all proceeds thereof...." *Movant's Initial Brief* at 6. The movant contends that the settlement monies are subject to its security interest in the proceeds of the franchise agreements. The trustee argues that "in settling the matters [he] had given up his right to assume and assign the franchise agreements and this right, which only becomes operable upon the filing of a petition for relief under ... the Bankruptcy Code, cannot be the subject of a security interest."[2] *Trustee's Brief* at 3.

### III.

The trustee cites no relevant authority for his position. The movant relies upon the holding of *NBD Park Ridge Bank v. SRJ Enterprises, Inc. (In re SRJ Enterprises, Inc.)*, 150 B.R. 933 (Bankr.N.D.Ill.1993). In *SRJ Enterprises*, a chapter 11 debtor sold its automobile dealership assets to another dealer. Included as part of the sale proceeds was $125,000 allocated to the debtor's voluntary termination of an automobile franchise agreement so that the buyer was in a position to obtain a new franchise agreement from the same franchisor. The debtor in *SRJ Enterprises* argued that the $125,000

---

**1.** *Rule 9019. Compromise and Arbitration.*
    (a) *Compromise.* On motion by the trustee and after a hearing on notice ..., the court may approve a compromise or settlement.

**2.** Code § 365 generally provides that a trustee, with court approval, may assume and, if applicable law permits, assign any executory contract or unexpired lease of the debtor.

"termination fee" was not subject to the creditors' prepetition security interests in the debtor's "contract rights" and "general intangibles." The court ruled that "[i]n order for the Debtor to prevail, the Termination Fee must be proceeds of newly created postpetition value or proceeds of unencumbered, pre-petition value." *Id.* at 935. The court then held that under Code § 552 (prepetition security agreement that includes proceeds of collateral is enforceable in bankruptcy case) and Illinois law the franchise agreement was included within the meaning of either contract rights or general intangibles, and that "proceeds" included any amount received for disposition of such collateral even if disposition was by termination. *Id.* at 938, 941.

I conclude the same result follows under Connecticut law. *See* Conn.Gen.Stat. 42a-9-106 (" 'General intangibles' means any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments and money."). Mazda and Chrysler paid the $26,000 to reacquire through termination whatever rights the debtor had in the franchise agreements. The trustee's apparent attempt to link the settlement monies to those received postpetition by an estate through preference-avoiding actions is not convincing. *Cf., e.g., In re Tek-Aids Indus., Inc.,* 145 B.R. 253, 257 (Bankr.N.D.Ill.1992) (proceeds from a preference action could not be subject to prepetition security interest because the preference action could not exist prepetition).

### IV.

The motion of Chrysler Credit Corporation for payment of the settlement proceeds must be, and hereby is, granted. It is

SO ORDERED.