**FIRST AMERICAN BANK VALLEY, Plaintiff and Appellee,**

v.

**GEORGE J. HEGSTROM COMPANY, INC., d/b/a Rice Hegstrom Office Supply, and Glenn Holweger, Defendants and Appellants.**

Civil No. 950393.

Supreme Court of North Dakota.

June 27, 1996.

Rehearing Denied July 18, 1996.

John S. Foster, of Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for plaintiff and appellee.

Lyle H. Moe, Grand Forks, for defendants and appellants.

VANDE WALLE, Chief Justice.

George J. Hegstrom Company, Inc., doing business as Rice Hegstrom Office Supply [Hegstrom], and Glenn Holweger appealed from a summary judgment granting First American Bank Valley [Bank] $46,666.67 in settlement proceeds Hegstrom and Holweger received from the United States government. Because the Bank was entitled to the settlement proceeds under the unambiguous terms of the parties' agreement, we affirm.

In September 1990, Hegstrom, a Grand Forks office equipment business, contracted with the United States government to provide all labor, parts, and supplies for copiers for the Grand Forks Air Force Base from October 1990 through September 1991. The

contract also contained options for four additional one-year service periods.

Hegstrom received two commercial loans from the Bank. As security for the loans, Hegstrom assigned to the Bank its "right, title, interest and demand in any and all ... proceeds or payments" under the Air Force contract. Hegstrom also executed a security agreement on September 11, 1992, giving the Bank a security interest in "Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment" including "any rights and interests ... which I may have by law or agreement against any account debtor or obligor of mine," "General Intangibles" and "Assignment of Contract Proceeds & Payments" of the Air Force Contract. The loans were also secured by personal guaranties of, and real estate mortgages on property owned by, Glenn and Gail Holweger, the principal owners of Hegstrom.

In September 1992, the United States terminated its contract with Hegstrom. On October 27, 1992, Hegstrom submitted a certified claim to the Contract Office of the Air Force Base, seeking compensation under the contract for breach of the agreement. The government denied the claim. Hegstrom then defaulted on the two loans it received from the Bank and the Bank sued to collect on the loans.

On May 14, 1993, the Bank, Hegstrom, and the Holwegers entered into a loan work-out agreement. The Bank agreed to compromise a substantial deficiency in the loans, to release the real estate mortgages, and to release the Holwegers from their personal guaranties. Hegstrom and the Holwegers agreed to pay the Bank $20,000 in cash. In addition, the work-out agreement provided that Hegstrom would voluntarily surrender to the Bank "non-real estate collateral."

"Pursuant to Section 9–503 of the Uniform Commercial Code as enacted in the State of North Dakota, Hegstrom Company and the guarantors Glenn Holweger and Gail Holweger hereby voluntarily and peacefully surrender to the Bank all of the non-real estate property under their possession, title, custody or control and in which the Bank claims a security interest, including but not necessarily limited to the following:

\* \* \* \* \* \*

"c. Accounts, instruments, documents, chattel paper and other rights to payment, for goods sold or leased or for services rendered, whether or not earned by performance, and rights to payment arising out of all present and future debt instruments and receivables. This includes all service contracts for copiers and office machines previously sold or leased to customers by Hegstrom Company.

"d. All general intangibles ....

"e. Assignment of contract proceeds and payments of Grand Forks Air Force Base Contract ....

\* \* \* \* \* \*

"g. All proceeds or the equivalent from the sale or other disposition of any of the foregoing collateral."

Under the agreement, the parties mutually released all claims against each other resulting from their debtor-creditor relationship, "[e]xcept for the obligations of Hegstrom Company and Glenn and Gail Holweger as set forth in this agreement."

Two months later, Hegstrom and the Holwegers sued the United States in the United States Court of Federal Claims to recover damages for the government's breach of the Air Force contract. In December 1994, the United States informed the Bank that Hegstrom and the government had reached a settlement of the dispute and sent it copies of the settlement documents. The Bank then demanded that Hegstrom turn over the proceeds of the settlement after deducting attorney fees expended in obtaining the recovery. After Hegstrom refused to turn over the settlement proceeds, the Bank brought this action to recover the settlement proceeds under the terms of the work-out agreement and obtained a temporary restraining order to prevent the cashing of the $70,000 settlement check pending the outcome of the litigation. The trial court later imposed contempt sanctions against Hegstrom and Glenn Holweger for cashing the check and dispos-

ing of the proceeds in violation of the restraining order.

The Bank moved for summary judgment. Noting "[t]he action, as it now stands, is one for conversion" against Hegstrom and Glenn Holweger, the trial court granted the motion. The court concluded, as a matter of law, that "[t]he right to sue under the Air Force contract and the proceeds from a settlement for breach of that contract fall within the definition of 'non-real estate collateral' which Defendants surrendered to the Bank" in the workout agreement. The court further concluded, as a matter of law, that Hegstrom and Glenn Holweger "are jointly and severally liable for conversion of the settlement proceeds." Offsetting costs and attorney fees incurred by Hegstrom and Holweger in the lawsuit against the government, the trial court awarded the Bank a $46,666.67 judgment against them. This appeal followed.

■ Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Lire, Inc. v. Bob's Pizza Inn Rest., Inc.,* 541 N.W.2d 432 (N.D.1995).

■ Hegstrom and Holweger assert the trial court misconstrued the work-out agreement. They contend that the work-out agreement gave the Bank no interest in the right to sue the government under the Air Force contract or to the proceeds from the settlement of that lawsuit, and that the Bank's action therefore violates the mutual release of claims provision in the work-out agreement. We disagree.

■ We interpret a contract to give effect to the mutual intentions of the parties at the time of contracting. *Pamida, Inc. v. Meide,* 526 N.W.2d 487 (N.D.1995). Those intentions must be ascertained by the writing alone, if possible, and we construe the contract as a whole to give effect to each of its provisions. *Lire.* If the parties' intentions in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Coldwell Banker First Realty v. Kane,* 491 N.W.2d 716 (N.D.1992). We agree with the trial court that the work-out agreement clearly and unambiguously provided the Bank with all rights to payments under the Air Force contract, including the right to settlement proceeds from the breach of contract lawsuit against the government.

In arguing the release-of-claims provision of the workout agreement bars the Bank's action, Hegstrom and Holweger ignore the proviso to that section, "[e]xcept for the obligations of Hegstrom Company and Glenn and Gail Holweger as set forth in this Agreement." Those obligations were expansively defined earlier in the document in which Hegstrom and Holweger agreed to "voluntarily and peacefully surrender to the Bank all of the non-real estate property under their possession, title, custody or control and in which the Bank claims a security interest." It is obvious from the assignment, security agreement, and work-out agreement, that the contract rights, proceeds, and payments from the Air Force contract, and the right to collect them, was the major part of the security for the Hegstrom indebtedness, and that Hegstrom surrendered that collateral to the Bank as part of the work-out agreement.

■ The description of property in a security agreement is sufficient between the parties if it reasonably identifies what it describes. N.D.C.C. § 41–09–10 [UCC § 9–110]; *Thompson v. Danner,* 507 N.W.2d 550 (N.D.1993). Here, the descriptions in the security agreement and work-out agreement are sufficient to identify the rights to the settlement proceeds. Not only is the assignment of contract proceeds and payments under the Air Force contract specifically mentioned, but so is the right to payments arising out of present and future receivables. Furthermore, the agreements also covered "[a]ll general intangibles." A "general intangible" includes "things in action." N.D.C.C. § 41–09–06 [UCC § 9–106]. A thing in action is "a right to recover money or other personal property by a judicial proceeding." N.D.C.C. § 47–07–02. A thing in action is the same as a "chose in action." *See Black's Law Dictionary,* at p. 241 (6th

ed.1990); 8A R. Anderson, Uniform Commercial Code § 9–106:17 (3d ed.1996). Courts uniformly hold that, under the UCC, proceeds of an anticipated recovery from an impending lawsuit constitute general intangibles. *See, e.g., Board of Cty. Com'rs, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d 1251 (1978); *Gold Medal Products v. Love Enterprises,* 766 S.W.2d 759 (Mo.Ct.App. 1989); *Friedman, Lobe & Block v. C.L.W. Corporation,* 9 Wash.App. 319, 512 P.2d 769 (1973). Logically, the proceeds of a resulting settlement agreement are also considered general intangibles. *See, e.g., In re Silvernail Mirror and Glass, Inc.,* 142 B.R. 987 (Bankr.M.D.Fla.1992); *In re Bell Fuel Corp.,* 99 B.R. 602 (E.D.Pa.), *aff'd,* 891 F.2d 281 (3d Cir.1989); *In re Phoenix Marine Corp.,* 20 B.R. 424 (Bankr.E.D.Va.1982); *Bowlen v. Federal Deposit Ins. Corp.,* 815 P.2d 1013 (Colo.Ct.App.1991).

Hegstrom and Holweger assert the work-out agreement did not cover proceeds of the lawsuit they brought against the government because the suit was not formally commenced until two months after the work-out agreement was signed. Because the action "did not exist" until it was "commenced," they argue, the action against the government was a "future right to sue" not covered by the work-out agreement. We disagree.

■ Hegstrom's claim against the government accrued before the work-out agreement was executed in May 1993. Indeed, Hegstrom first submitted its formal administrative claim in October 1992. Thus, Hegstrom had filed a claim against the government, and was asserting a right to seek compensation under the Air Force contract when it surrendered that right by entering into the work-out agreement. A thing or chose in action is a comprehensive term including an infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action. *See McGee v. Stokes' Heirs at Law,* 76 N.W.2d 145 (N.D.1956). We reject the argument that the settlement

proceeds somehow became after-acquired property not subject to the work-out agreement simply because Hegstrom and Holweger did not formally commence the lawsuit [1] or receive those proceeds until after the work-out agreement was executed.

We conclude that the trial court correctly ruled, as a matter of law, that the Bank was entitled to the settlement proceeds under the unambiguous terms of the work-out agreement.

Hegstrom and Holweger also assert that the trial court erred in refusing to consider the work-out agreement as a novation which redefined the obligations of the parties. This argument is without merit. Even if the work-out agreement was a novation which redefined some of the obligations of the parties, the agreement still required them to surrender the Air Force contract settlement proceeds to the Bank.

The summary judgment is affirmed.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

---

1. It is unclear from the record why Hegstrom, having given the Bank an assignment of its rights to the Air Force contract proceeds and payments, sued the government, and why the Bank did not join in the action. In any event, the trial court deducted Hegstrom's costs and attorney fees for bringing the action against the government from the Bank's recovery in this case.