**OHIO FARMERS INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**DAKOTA AGENCY, INC., Defendant and Appellant.**

Civil No. 960016.

Supreme Court of North Dakota.

July 24, 1996.

Rebecca S. Theim (argued), of Zuger Kirmis & Smith, Bismarck, for plaintiff and appellee.

James J. Coles (argued), of Snyder Coles Lawyers, Bismarck, for defendant and appellant.

NEUMANN, Justice.

Dakota Agency, Inc. (Dakota), appeals from a summary judgment awarding Ohio Farmers Insurance Company (Ohio) $300,000 in damages for breach of contract. We affirm.

In November 1989, Dakota entered into an "Agency Agreement" with Ohio. Randall L. Standaert, an employee and licensed insurance agent of Dakota, signed the agreement on behalf of Dakota as its general manager. The agreement incorporated the terms of the Underwriting Guide and Limit of Authority for Fidelity and Surety Bonds which required prior approval from Ohio before Dakota could issue certain Ohio bonds to Dakota customers.

In December 1989, Ohio requested that Dakota update the powers of attorney for individuals working in the agency. Ohio is-

sues powers of attorney solely to employees and licensed agents of its corporate agencies, relying on the agency's representations that the individual is licensed and qualified to execute undertakings on behalf of the agency and Ohio. Ohio had previously granted Standaert powers of attorney through Dakota's predecessor and other insurance agencies where Standaert had worked. In April 1990, powers of attorney were issued to Standaert and another Dakota employee, and both signed an underwriting guide and letter of authority with Ohio.

In May 1990, Standaert executed, as attorney-in-fact for Ohio, a $150,000 performance bond guaranteeing the contractual obligations of S & G Packing Company (S & G) to the United States Department of Agriculture (USDA) for fiscal year ending September 30, 1990, to package unprocessed honey. In October 1990, Standaert again executed, as attorney-in-fact for Ohio, another $150,000 performance bond guaranteeing the contractual obligations of S & G to the USDA for fiscal year ending September 30, 1991. Both performance bonds were issued without the prior approval of Ohio. Neither Ohio nor Dakota received any premium payments for the bonds.

A fire occurred at S & G on October 26, 1990, destroying more than one million pounds of USDA-owned honey. S & G did not perform its contractual obligations to the USDA, and the USDA notified Ohio of a loss in excess of the $300,000 amount of the performance bonds. Ohio had no prior knowledge of the bonds and would not have approved their issuance if approval had been requested by Standaert.

Ohio paid the USDA $300,000 in full satisfaction of its obligations under the performance bonds and USDA gave Ohio a release and assignment of its $300,000 claim. Ohio's collection efforts against S & G and Standaert were unsuccessful, and Ohio sued Dakota for $300,000, alleging Dakota was responsible for Standaert's unauthorized conduct.

The trial court granted Ohio's motion for summary judgment, concluding as a matter of law that Standaert was acting as an agent and employee of Dakota when he issued the performance bonds to S & G, that Ohio had not given Dakota authority to issue the bonds, and that, under the unambiguous terms of the agency agreement, Dakota's breach entitled Ohio to $300,000 in damages. The trial court also ruled, as a matter of law, Dakota was liable to Ohio under principles of tort law and respondeat superior. Dakota appealed.

■ Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Osterman–Levitt v. MedQuest, Inc.*, 513 N.W.2d 70, 72 (N.D.1994). It is unnecessary for us to consider whether Dakota is liable under general principles of tort law and respondeat superior because we agree with the trial court that, as a matter of law, Ohio is entitled to summary judgment against Dakota under the clear and unambiguous terms of the agency agreement.

■ We interpret contracts to give effect to the mutual intentions of the parties at the time of contracting. *Pamida, Inc. v. Meide*, 526 N.W.2d 487, 490 (N.D.1995). Those intentions must be ascertained by the writing alone, if possible, and we construe the contract as a whole to give effect to each of its provisions. *Lire ·v. Bob's Pizza Inn Rest., Inc.*, 541 N.W.2d 432, 433–434 (N.D. 1995). If the parties' intentions in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *First American Bank Valley v. George J. Hegstrom Company, Inc.*, 551 N.W.2d 288, —— (N.D.1996).

■ In the agreement, signed by Standaert on behalf of Dakota as its general manager, Ohio designated Dakota an "independent contractor" and gave it

"authority to solicit applications, bind coverage and countersign or endorse insurance policies (which shall for this Agreement include fidelity and surety bonds, endorsements and renewals) to which this

Agreement applies only as specifically authorized and as provided in manuals, rule books or underwriting guides, all of which the Company may amend or supplement at any time. [Dakota] shall promptly notify within five (5) working days the Company of all liability accepted or bound and shall promptly transmit copies or evidence of insurance policy applications and binders and of all policies and endorsements issued."

The agreement further provides, under the subheading "Extent of Agent's Authority," that Dakota would be subject to "the Underwriting Guide and Limit of Authority for Fidelity and Surety Bonds." The Underwriting Guide did not give Dakota the authority to bind Ohio to the issuance of performance bonds unless Dakota received prior authorization from Ohio.

"3. Any bond not included in one of the classes hereinafter mentioned is not authorized and is not to be executed until specific authority has been secured from your Reporting Office.

\*     \*     \*     \*     \*     \*

"7. In order to avoid any possible misunderstanding, we repeat that when an agency holds powers of attorney, the ONLY bonds which may be executed are those authorized by such powers of attorney, SUBJECT ALSO TO THE LIMITATIONS SET OUT IN ABOVE RULES; and if any obligation is executed in VIOLATION OF THE AUTHORITY LIMITS and conditions herein given, the Agency and the person or persons signing such unauthorized obligations may be held responsible for any loss or injury the Company may suffer."

In this case, one of the operational officers of Dakota admitted in an affidavit that Ohio would not grant an agency agreement to Dakota unless Dakota established "to the satisfaction of Ohio ... that we would have employees in the agency who were knowledgeable in the insurance business" and that,

as part of the negotiation process, Dakota arranged for Standaert's employment because Dakota believed him to be "knowledgeable and experienced." Standaert's actions as an employee were done on Dakota's behalf. It is undisputed that Standaert and Dakota did not receive prior approval from Ohio before the performance bonds were issued to S & G. By failing to receive prior authorization, Dakota breached its agency agreement with Ohio, subjecting Dakota and Standaert to responsibility "for any loss or injury [Ohio] may suffer." It is also undisputed that the loss or injury to Ohio is the $300,000 it paid the USDA under the terms of the unauthorized performance bonds.

■ Dakota contends Standaert was acting as a dual agent for both Dakota and Ohio, and the dual agency relationship is fatal to any claim for damages made by Ohio. But Dakota does not assert the agency agreement is either unlawful, see *Miller v. Klindworth*, 98 N.W.2d 109, 111 (N.D.1959); N.D.C.C. § 9–08–01, or void as against public policy. See *Johnson v. Peterbilt of Fargo, Inc.*, 438 N.W.2d 162, 163–164 (N.D.1989). Regardless of the effect Standaert's alleged dual agency status, see 16 Appleman, *Insurance Law and Practice* § 8736 (1981), and the effect general principles of agency law, see N.D.C.C. § 3–02–14, might have on the tort and respondeat superior theory also relied on by the trial court in granting summary judgment, the clear and unambiguous terms of the agency agreement impose liability upon Dakota for this breach of contract.

The summary judgment is affirmed.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.