968 P.2d 1048

Michael FIGUEROA as Trustee of the
D'Esprit, Inc. Profit Sharing Plan,
Intervenor/Appellant,

v.

Delphi ACROPOLIS, an Arizona General
Partnership, Defendant/Appellee.

No. 2 CA–CV 97–0028.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 2, 1997.

Reconsideration Denied Jan. 15, 1998.

Review Denied Oct. 28, 1998.

Gabroy, Rollman & Bossé, P.C. by Ronald
M. Lehman and Richard A. Brown, Tucson,
for Intervenor/Appellant.

Fennemore Craig by Andrew M. Feder-
har, Christopher P. Staring and Jeffrey S.
Silvyn, Tucson, for Defendant/Appellee.

## OPINION

ESPINOSA, Judge.

Intervenor/appellant Michael Figueroa, as
Trustee of the D'Esprit, Inc. Profit Sharing

Plan (the Plan), appeals from a judgment permitting defendant/appellee Delphi Acropolis (Acropolis), a general partnership, to garnish funds payable to plaintiff Canyon State Equity, Inc. by another partnership, Delphi Aegina (Aegina). The Plan argues that the trial court erred in denying its motion to quash the garnishment and challenges the award of attorneys' fees to Acropolis. For the reasons set forth below, we vacate the judgment and remand for an award of attorneys' fees to the Plan.

### Facts and Procedural Background

This appeal involves two underlying actions. In the first, Canyon State sued Acropolis to collect on a promissory note executed in favor of Douglas and Connie Campbell, and assigned to Canyon State in the Campbells' bankruptcy proceedings (the Acropolis Note). The trial court granted summary judgment for Acropolis awarding it attorneys' fees and costs totaling $28,052.[1] In the second action, Canyon State, again as successors in interest to the Campbells, sued Aegina to collect on a promissory note dated December 3, 1986, for $1.15 million (the Aegina Note). Canyon State and Aegina settled the action in March of 1996. In their settlement agreement entitled "Mutual Release," Aegina agreed to pay Canyon State $215,000, but admitted no liability. Canyon State agreed to release all claims against Aegina and to dismiss the action with prejudice after receiving payment from Aegina. In order to collect its judgment, Acropolis sought to garnish a portion of the sum Aegina owed Canyon State.[2] *See* A.R.S. § 12–1572. By stipulation, the Plan intervened in this action pursuant to Rule 24, Ariz. R. Civ. P., 16 A.R.S., and moved to quash the garnishment, claiming it had a perfected security interest in the proceeds from the Aegina Note as collateral for loans it had made to Canyon State.

Beginning in July 1993, Canyon State and the Plan entered into a series of loan and security agreements in which the Plan loaned varying sums to Canyon State, secured by the Acropolis and Aegina Notes. In July 1995, Canyon State and the Plan executed a loan modification agreement in which Canyon State, "in order to perfect [the Plan's] lien thereon," assigned "its right, title and interest along with and including the indebtedness evidenced thereby, and all rights, claims, causes of action, and other property interests resulting" from the Aegina Note to the Plan.

The last agreement between Canyon State and the Plan, dated October 31, 1995, contained a "No Merger" clause that stated that the loan documents "will remain in full force and effect" and that the Plan reserved the right to assert all claims against the collateral subject to the terms of "this Agreement." In an "Assignment of Proceeds Without Recourse" executed on November 13, 1995, pursuant to the October 31 agreement and incorporated by reference therein, Canyon State assigned "all proceeds due it, if any, emanating from the [Aegina] Note ... along with the proceeds emanating from such contracts and obligations, claims and rights in said contracts" to the Plan. The assignment stated that it was "not intended to transfer the ownership of said Note, but only any proceeds that may come to [Canyon State]."

After an evidentiary hearing, the trial court concluded that the $215,000 Aegina agreed to pay Canyon State was "solely to obtain a dismissal of the litigation with prejudice" and "does not represent 'proceeds' of the [Aegina] note," denied the Plan's motion to quash, and granted judgment in favor of Acropolis and against Aegina, the garnishee, in the amount of $28,052. The court subsequently granted Acropolis's $11,731 request for attorneys' fees against the Plan. This appeal followed.

### Settlement Funds as Proceeds

■ We will uphold the trial court's findings if they are justified by any reasonable construction of the evidence, viewing the

---

1. The summary judgment in favor of Acropolis was affirmed by this court on appeal. *Canyon State Equity, Inc. v. Delphi Acropolis,* 2 CA–CV 96–0143 (memorandum decision filed June 24, 1997).

2. Of the $215,000 Aegina agreed to pay, the Plan received $185,000 and the remaining $30,000 is in the trust account of Aegina's attorney pending the outcome of this action.

evidence in the light most favorable to sustaining the judgment. *Able Distributing Co., Inc. v. James Lampe, General Contractor,* 160 Ariz. 399, 773 P.2d 504 (App. 1989). We are not bound by the trial court's conclusions of law, however, and review such questions de novo. *Colonial Life & Accident Insurance v. State,* 184 Ariz. 533, 911 P.2d 539(App. 1995).

■■■ The Plan contends it had a security interest in, and an "absolute assignment" of, any and all proceeds of the Aegina Note, and challenges the trial court's conclusion that the $215,000 Aegina agreed to pay to settle the Canyon State action were not "proceeds" of the Note. This issue can be resolved by reference to Arizona's Uniform Commercial Code (UCC). Article Nine of the UCC applies to security interests in personal property, including "documents, instruments, general intangibles, chattel paper or accounts," A.R.S. § 47–9102(A)(1), and defines proceeds as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." A.R.S. § 47–9306(A). As a general rule, this definition is given a broad and liberal construction. *McGonigle v. Combs,* 968 F.2d 810 (9th Cir.1992); *In re Munger,* 495 F.2d 511 (9th Cir.1974); *In re Stone,* 52 B.R. 305 (Bankr.W.D.Ky.1985); *Farmers & Merchants National Bank v. Sooner Cooperative, Inc.,* 766 P.2d 325 (Okla. 1988); *Rainier National Bank v. Bachmann,* 111 Wash.2d 298, 757 P.2d 979 (1988); *see also* A.R.S. § 47–1102(A) (Arizona's UCC "shall be liberally construed and applied to promote its underlying purposes and policies").

A number of courts have found that settlement funds clearly fit within this broad definition. *See McGonigle* (settlement funds were proceeds of stock in which bank held perfected security interest); *In re Metro Motor Sales, Inc.,* 160 B.R. 267 (Bankr.Conn. 1993) (settlement represented proceeds of debtor's franchise agreements); *Stone* (sums received in settlement of claim for tortious damage of secured collateral were proceeds); *In re Phoenix Marine Corp.,* 20 B.R. 424 (Bankr.E.D.Va.1982) (plaintiffs with secured interest in general intangibles entitled to proceeds of tort settlement); *First American*

*Bank Valley v. George J. Hegstrom Co.,* 551 N.W.2d 288, 291 (N.D.1996) (secured interest in "contract proceeds and payments" covered funds received by debtor for settling suit for breach of that contract). Acropolis has not meaningfully distinguished any of these cases, and we have found no authority to the contrary. Moreover, the trial court's finding that Aegina paid consideration "solely" to obtain dismissal of the Canyon State litigation is unsupported by the evidence. The Mutual Release specifically stated that Canyon State would "forever release and discharge" Aegina from "any and all claims and liabilities of any nature whatsoever … arising out of … the Promissory Note, dated December 3, 1986."

Acropolis attempts to avoid application of A.R.S. § 47–9306(A) by arguing that the settlement "was an Accord and Satisfaction" with no admission of liability, and its failure to reference or mention the assignment or the Plan eliminated any other obligations under the Aegina Note. Acropolis cites no authority for this proposition and at oral argument admitted it was unable to locate any. As the Plan points out, and as Acropolis additionally conceded at argument, the sole purpose of the action brought by Canyon State was to collect on the Aegina Note, and the "Mutual Release" clearly provided that the consideration for Aegina's payment was its release from liability on that Note. That the agreement did not mention the Plan or its security interest in the proceeds of the Note is of no moment. The settlement funds were received upon the disposition of the collateral and were therefore, both logically and legally, direct proceeds of the debt sued upon, regardless of how the settlement agreement was phrased or is now characterized. "A cow, after all, does not become a horse simply by calling it a horse." *Mullet v. Miller,* 168 Ariz. 594, 597, 816 P.2d 251, 254 (App.1991).

■■■ Acropolis alternatively contests the validity of the Plan's interest, arguing that any previous assignments were "superseded" by the October 1995 agreement which conveyed only "a limited right to receive payments made to Canyon State on the note." In support of this argument, Acropolis cites

the agreement's integration clause, which stated, "This Agreement constitutes the entire and final agreement between the parties and there are no . agreements, understandings, warranties or representations between the parties except as set forth herein," and an attachment that provided, "This Assignment of Proceeds is not intended to transfer ownership of said Note, but only any proceeds that may come to the borrower [Canyon State] herein." Acropolis claims this "expressly provides that Canyon State remains the owner of the note and contemplates that payments would come to Canyon State," thereby divesting the Plan's ownership and security interest. Acropolis reads too much into that provision, however, and ignores other language in the October agreement specifically reaffirming the Plan's security interest in the Note, reserving the Plan's continuing right to assert claims against the collateral, providing that all previous loan documents were still in full force and effect, and defining "loan documents" as including "all ... documents held by the Lender [the Plan] relating to the Indebtedness." Thus, despite the parties' considerable efforts dissecting the various agreements involved throughout the history of this case, even assuming only the October 31 and November 13 documents apply,[3] the same result would follow because those documents clearly establish the Plan's right to the proceeds of the Note, rather than only "payments under the note" as urged by Acropolis.

We conclude the trial court erred in finding the $215,000 settlement Aegina agreed to pay Canyon State was not "proceeds" of the Aegina Note. We therefore vacate the judgment in favor of Acropolis and remand with directions to enter judgment for the Plan on its motion to quash Acropolis's writ of garnishment.

### Attorneys' Fees

The Plan additionally challenges the trial court's award of attorneys' fees to Acropolis under A.R.S. § 12–1580(E). Because Acropolis is no longer the prevailing party, we vacate the fee award and remand the matter to the trial court to award the Plan's reasonable fees under § 12–1580(E). Pursuant to that section and upon compliance with Ariz. R. Civ.App. P. 21(a), 17B A.R.S., the Plan is awarded its reasonable attorneys' fees and costs on appeal.

Vacated and remanded with directions.

PELANDER, P.J., and HOWARD, J., concur.

---

**3.** At oral argument, Acropolis conceded that the October 31 agreement and November 13 assignment were in effect and are applicable.