36 P.3d 1217

**UNIVERSITY MEDICAL CENTER CORPORATION, an Arizona nonprofit corporation, Plaintiff–Appellant,**

v.

**The DEPARTMENT OF REVENUE of the State of Arizona; Pima County, a body politic and corporate; Rick Lyons, in his capacity as Pima County Assessor; and James Lee Kirk, in his capacity as Pima County Treasurer, Defendants–Appellees.**

No. 1 CA–TX 01–0005.

Court of Appeals of Arizona,
Division 1, Department T.

Dec. 24, 2001.

Brown & Bain, P.A. by D. Douglas Metcalf, Philip R. Higdon, Tucson, for Plaintiff–Appellant.

Barbara LaWall, Pima County Attorney by Alison K. North, Deputy County Attorney, Tucson, for Defendants–Appellees.

## OPINION

NOYES, Judge.

¶ 1 University Medical Center Corporation ("UMCC") appeals from a judgment in favor of appellees (collectively "the assessor") determining as a matter of law that six parcels that UMCC owned outside the University of Arizona campus did not qualify for exemption from ad valorem taxation under Arizona Revised Statutes ("A.R.S.") section 15–1637(D) (Supp.2001), 42–11105(A) (1999), 42–11105(B), or 42–11107 (1999). UMCC's entitlement to exemption under A.R.S. § 15–1637(D) is the dispositive question on this appeal.

## FACTS AND RELEVANT PROCEDURE BELOW

¶ 2 For many years before 1984, the Arizona Board of Regents owned and operated the University Hospital, now known as the University Medical Center, a full-service acute care and teaching hospital located on the campus of the University of Arizona in Tucson. During that period, the hospital perennially incurred large financial losses that placed a continuing drain on state funds. A study commissioned as part of an effort to reorganize the governance of the hospital attributed the losses in part to the hospital's inability as a state agency to compete in the health care marketplace and the practical barriers to patient access posed by the hospital's location on the University campus. The study opined that inadequate patient volume at the hospital impaired the hospital's ability to support the many specialties in which medical schools are required to offer training. The study predicted that annual losses similar to the $20 million that the hospital was projected to lose in 1986 would continue for the foreseeable future if the hospital continued to operate as it did.

¶ 3 In 1984, the Arizona Legislature adopted A.R.S. § 15–1637 to allow the Board of Regents to privatize the hospital while retaining sufficient control over operations to avoid compromising the hospital's educational function. The statute authorized the Board of Regents to lease real and personal property to a nonprofit corporation ("the nonprofit") "for purposes of operating a health care institution as defined in [section] 36–401." A.R.S. § 15–1637(A). The Board of Regents could require that any such lease condition the nonprofit's right to engage in business transactions specified in the lease on advance approval by the Board. A.R.S. § 15–1637(B).

¶ 4 Section 15–1637 also imposed a series of restrictions on the formation and operation of the nonprofit itself. The nonprofit, to which the statute refers throughout as the "nonprofit corporation which is a lessee as described in subsection A of this section," § 15–1637(C), (D), (E), (F), (G), (H), (J), (K), (L), was to be organized as such only upon the approval of the Board of Regents.

A.R.S. § 15–1637(K)(1). It was to be formed under articles of incorporation or bylaws approved by the Board of Regents and amendable only with the Board's approval, and to be governed by a board of directors whose members were all appointed by the Board of Regents. A.R.S. § 15–1637(K)(1)–(3).

¶ 5 None of the nonprofit's earnings could benefit or be distributed to its members, directors, officers, or any other individuals except for reimbursement of corporate expenses, payment of reasonable compensation for services of persons other than members of the board of directors, and payments in furtherance of the nonprofit's purposes. A.R.S. § 15–1637(K)(3)(a). Upon any dissolution or liquidation of the nonprofit, its net assets after payment of liabilities were to be distributed to the Board of Regents or its successor. A.R.S. § 15–1637(K)(3)(b).

¶ 6 Aside from the powers granted to all nonprofit corporations generally under Arizona law, the nonprofit was to possess only those powers that the Board of Regents delegated to it and were "necessary to satisfy the requirements of [section 103][1] of the Internal Revenue Code." A.R.S. § 15–1637(D). The nonprofit was required to report to the Board of Regents, the legislature, and the governor semiannually concerning its financial status and provide the auditor general with independently audited financial statements within ninety days after the end of each fiscal year. A.R.S. § 15–1637(J).

¶ 7 Subsection 15–1637(E) authorized the nonprofit to issue revenue bonds for "health care.institutional purposes" to the extent authorized by its lease with the Board of Regents. Subsections 15–1637(F) and (G) authorized the nonprofit to acquire and operate "other health care institutions and real and personal property for purposes of providing products and services related to the operation of health care institutions owned, leased or operated by it," as long as the acquisition and operation related to and furthered the hospital's educational or research purposes or promoted the efficient and economical operation of the hospital or any other health care institution that the nonprofit acquired.

¶ 8 Subsections (C) and (D) of A.R.S. § 15–1637 provide:

C. To satisfy the requirements of section 103 of the Internal Revenue Code . . . , any nonprofit corporation which is a lessee as described in subsection A of this section is declared to be:

1. A validly organized and existing body politic and corporate exercising its powers for the benefit of the people, to improve their health and welfare and to increase their prosperity.

2. Engaged in a purpose essential to public health care.

3. Performing an essential governmental function.

D. Any nonprofit corporation which is a lessee as described in subsection A of this section is exempt from property taxation by this state or any agency or subdivision of this state. . . .

(Footnote omitted.)

¶ 9 In 1984, the Board of Regents formed appellant UMCC as the nonprofit corporation contemplated by A.R.S. § 15–1637. Pursuant to the statute, the Board leased the hospital and conveyed hospital assets to UMCC. Because UMCC is considered a "component unit" of the state, the State Comptroller regards UMCC's assets as state assets. The Internal Revenue Service has determined that UMCC is a tax-exempt organization under 26 U.S.C. § 501(c)(3). The assessor conceded below that UMCC constitutes a "charitable institution" within the meaning of Article 9, Section 2(2) of the Arizona Constitution.

¶ 10 From 1996 through 1998, UMCC acquired the six off-campus parcels that are at issue in this litigation. These comprised an office building, a vacant parcel contiguous to the office building, a separate vacant parcel in northwest Tucson, and three medical office buildings. UMCC uses the office building to house its home health agency, its occupational and physical therapy department, and

---

1. Section 103 authorizes exclusion from federal gross income of any income earned from a "State or local bond," defined as "an obligation of a State or political subdivision thereof." 26 U.S.C. § 103(a), (c)(1) (1994).

many of its administrative offices. UMCC bought and commenced to improve the northwest Tucson parcel as an outpatient clinic but postponed further development due to budget constraints. UMCC used its three medical office buildings as outpatient clinics staffed by UMCC physicians with University Hospital privileges and faculty appointments at the College of Medicine. It sold one clinic and continues to operate the other two. In the joint pretrial statement, the parties agreed that UMCC owned all six parcels in fee simple, that its use of them was exclusive, and that "[n]one of the properties [is] used or held for profit."

¶ 11 At UMCC's request, the assessor removed UMCC's first offcampus acquisition, the office building, from the tax roll for 1996. The building remained off the roll in 1997 and 1998. The assessor later questioned and then denied exempt status for any of UMCC's off-campus properties and assessed delinquent property taxes against each of the six for some or all of the years 1997 through 1999. In September 1999, UMCC brought this action for declaratory relief and tax refunds. As additional taxes became due, UMCC amended its complaint by stipulation to add them to its refund claim.

¶ 12 UMCC moved for summary judgment on the theory that all six off-campus parcels were exempt under A.R.S. § 15–1637(D). After argument, the tax court denied the motion. Before trial on UMCC's remaining theories of exemption, the assessor moved for partial summary judgment on UMCC's claims for refunds of the 1997 and 1998 taxes on one of the six parcels, the 1998 taxes on a second, and the 1999 taxes on a third. The assessor's theory was that these taxes were paid late, and therefore under A.R.S. § 42–11004 could not be refunded even if UMCC's exemption claim was ultimately sustained. The tax court did not rule on this motion before trial, which occurred on December 12 and 13, 2000.

¶ 13 In a post-trial memorandum, the assessor argued that even if some of the six parcels were determined to be exempt, refunds could be granted only for those years in which UMCC owned and engaged in exempt use as of January 1. The tax court's under-advisement ruling concluded that none of UMCC's six off-campus parcels was exempt under any of the theories presented, and accordingly did not reach either the delinquent payment or the January 1 ownership issue. From formal judgment entered in accordance with the tax court's rulings, UMCC appeals. We have jurisdiction. A.R.S. § 12–2101(B) (1994).

## ANALYSIS

■■■ ¶ 14 The Arizona Constitution, Article 9, Section 2(2), provides: "Property of educational, charitable and religious associations or institutions not used or held for profit may be exempt from taxation by law." We review interpretations of the Arizona Constitution and statutes *de novo* on appeal. *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, 46, ¶ 9, 969 P.2d 649, 652 (1998); *Massey v. Bayless*, 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996). An appellate court is not bound by a trial court's conclusions of law, and reviews them *de novo*. *Figueroa v. Acropolis*, 192 Ariz. 563, 564–65, 968 P.2d 1048, 1049–50 (App.1997).

■■ ¶ 15 The assessor argues that A.R.S. § 15–1637(D) was clearly intended to exempt the University Hospital only. He contends that the language in subsection D, "Any nonprofit corporation which is a lessee as described in subsection A of this section,"

> refers to UMCC in its role as lessee of the Campbell Avenue campus. The sentence's grammatical structure compels this conclusion. The clause "which is a lessee" modifies the noun "corporation" and adds meaning to that noun. The clause is reasonably interpreted to refer only to the "corporation's" role as "lessee", that is, the lease of the Campbell Avenue campus. The Campbell Avenue campus is the only property for which UMCC is "lessee". This interpretation actually makes more logical sense to the Assessor: why refer to UMCC in its status as lessee if we are not talking about the leased property? The Assessor posits that the language unam-

biguously refers only to the Campbell campus.

We do not agree with this argument.

¶ 16 The assessor's thesis is inconsistent with the text of § 15–1637 as a whole. As we have noted, the phrase "nonprofit corporation which is a lessee as described in subsection A" is used not only in subsection D of § 15–1637 but also in subsections E, F, G, H, J, K, and L. Unlike subsection D, none of the latter subsections can reasonably be interpreted to discuss or focus on the leased property alone. Some, indeed, do not relate to the leased property at all. A.R.S. § 15–1637(H), (J), (K). Subsections F and G, moreover, expressly authorize the nonprofit to acquire and operate other health care institutions and other real and personal property within specified limitations. Similarly, A.R.S. § 15–1638(A) (1991), which refers to the "nonprofit corporation that is a lessee pursuant to § 15–1637, subsection A," has nothing to do with leased property; it requires the nonprofit to disclose and make available matters and records as required by Title 39, Chapter 1, of the Arizona Revised Statutes, with exception if applicable.

¶ 17 Contrary to the assessor's contention, the phrase "nonprofit corporation which is a lessee as described in subsection A of this section" was obviously not custom-crafted for subsection D as a roundabout way of restricting the tax exemption for the nonprofit's "property" to the original hospital. If that had been the legislature's intent, it would simply have limited the exemption to property leased or conveyed to the nonprofit by the Board of Regents. It did not do so. All the subsections of A.R.S. § 15–1637 that use the "lessee" phrase, including subsection D, quite plainly do so as a simple identifier. The

exemption provided by A.R.S. § 15–1637(D) therefore applies to all UMCC property that is not used or held for profit, not just to the hospital.

■ ¶ 18 In denying UMCC's motion for summary judgment, the tax court viewed the exemption provided in A.R.S. § 15–1637(D) as a blanket "entity" exemption. The tax court stated that UMCC had provided it with "no persuasive precedent for declaring an 'entity exemption,'" and that "[t]he legislature may not grant an entity exemption to a private organization consistent with existing interpretations of the Arizona Constitution." Building on the tax court's analysis, the assessor urges on appeal that the supreme court in *Conrad v. Maricopa County*, 40 Ariz. 390, 12 P.2d 613 (1932), clearly held that "qualification on an entity level under Article 9 Section 2" is impermissible. To support this position, the assessor relies on the following sentence in *Conrad:* "It will be noted the exemption is not of all property belonging to certain owners, or even to all property belonging to such owners which is not used or held for profit." *Id.* at 393–94, 12 P.2d at 615.

¶ 19 We disagree with the assessor's reading of *Conrad.* The *Conrad* court straightforwardly stated that Article 9, Section 2(2) "permits the Legislature to exempt such of the property of 'charitable ... associations or institutions' as is not used or held for profit." *Id.* at 393, 12 P.2d at 615. The remainder of the court's analysis, which includes the excerpt on which the assessor relies, focused not on Article 9, Section 2(2), but instead on the particular statute on which the taxpayer based its claim for exemption. *See* Ariz. Rev.Code § 3066(3) (1928) (current version at A.R.S. § 42–11105(A) (1999)).[2] The asses-

---

2. The expanded text of the *Conrad* court's transition between these distinct subject matters makes this clear:

> It is obvious to us that in the constitutional provision above quoted the word "institution" applies to the established society itself and not to the buildings owned or occupied by the organization. If this were not true, it would be superfluous to use the words "property of ... institutions." *When, however, we come to the statute which actually specifies what exemptions are granted,* it will be noted the exemption is not of all property belonging to certain own-

ers, or even to all property belonging to such owners which is not used or held for profit. The exemption specifies, first, certain named institutions, to wit, hospitals, asylums, and poorhouses, and then adds "other charitable institutions"; and limits particularly the purpose for which all these institutions are to be used as being "for the relief of the indigent or afflicted,".... We think, therefore, that the "charitable institutions" referred to in the subdivision of section 3066 above quoted are physical property or buildings, whose principal use is for the relief of the indigent or afflicted,

sor is thus mistaken to the extent he argues that Article 9, Section 2(2) of the Arizona Constitution withholds from the legislature any authority to exempt property without conditioning the exemption on the owner's actively subjecting the property in question to a particular use specified by statute.[3]

¶ 20 Section 15–1637(D) therefore grants no blanket "entity" exemption. Viewed in isolation according to its literal terms, § 15–1637(D) might appear to exempt all of the nonprofit's property from ad valorem property taxation regardless of the use to which such property is put. However, none of the remaining provisions of § 15–1637 authorizes or contemplates any for-profit use of the nonprofit's property. *See also supra,* ¶ 7 (discussing A.R.S. § 15–1637(F) and (G)). We find it likely that in adopting the exemption in § 15–1637(D) the legislature omitted any express limitation to property "not used or held for profit" as simply superfluous.

■■■ ¶ 21 In any event, the limited exemption authority that the Arizona Constitution grants to the legislature necessarily curtails the scope of any tax-exemption statute. *See Circle K Stores, Inc. v. Apache County,* 199 Ariz. 402, 405–06, ¶ 8, 18 P.3d 713, 716–17 (App.2001). A court must interpret a tax-exemption statute "so that it conforms to the constitutional grant of authority." *Id.; cf. Bus. Realty of Ariz., Inc. v. Maricopa County,* 181 Ariz. 551, 559, 892 P.2d 1340, 1348 (1995) (stating that statute must be construed, if possible, in a way that renders it constitutional); *Jackson v. Tangreen,* 199 Ariz. 306, 309, ¶ 5, 18 P.3d 100, 103 (App.

2000) (same). We therefore strictly construe the exemption provided by A.R.S. § 15–1637(D) to apply only to such property of UMCC as is "not used or held for profit." This readily conforms the statutory exemption to the limitation imposed by Article 9, Section 2(2) of the Arizona Constitution. *See Renalwest L.C. v. Ariz. Dep't of Revenue,* 189 Ariz. 409, 412, 943 P.2d 769, 772 (App.1997) ("Although we strictly construe tax exemptions, we will not deny lawful exemptions.").

■■■ ¶ 22 In ruling on UMCC's motion for summary judgment, the tax court also found a conflict between the broad exemption granted in A.R.S. § 15–1637(D) and the portion of Article 9, Section 1 of the Arizona Constitution commonly referred to as the Uniformity Clause. The Uniformity Clause provides: "Except as provided by section 18 of this article,[4] all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax...." Ariz. Const. art. 9, § 1. The tax court concluded that an exemption applicable to some classes of property and not to others like them, such as that in A.R.S. § 15–1637(D), would violate the Uniformity Clause, and it therefore interpreted the statute so as to avoid the perceived conflict:

> In order to preserve the constitutionality of the statute—and for no other reason—this court interprets ARS 15–1637(D) as a grant of exemption to the specific University of Arizona hospital property that was initially leased to UMCC by the Board of Regents,[5] and not to any other property leased or purchased by UMCC.

---

when such property is not used or held for profit, and not the organizations themselves, even though charitable in their nature, which may or may not hold certain of their property as exempt.

40 Ariz. at 393–94, 12 P.2d at 614–15 (emphasis added).

**3.** That is not to say that Article 9, Section 2(2) incorporates no "use" requirement at all. As we have recognized, Article 9, Section 2(2) allows the legislature to exempt property of a charitable institution only if the property is "not used or held for profit." *See Kunes v. Samaritan Health Serv.,* 121 Ariz. 413, 416, 590 P.2d 1359, 1362 (1979) (holding that Article 9, Section 2(2) exemption of property not " 'used or held for profit' creates a use requirement in addition to the ownership requirement").

**4.** The Arizona Constitution, Article 9, Section 18 imposes certain percentage limits on the increase in full cash valuation of residential properties from year to year, and allows low-income Arizona residents of sixty-five years and older in effect to freeze the full cash values of their residences.

**5.** The hospital property has always been treated as automatically exempt from property taxation under Article 9, Section 2(1) of the Arizona Constitution as state property, both before and after the adoption of A.R.S. § 15–1637. This case does not concern the exempt status of the hospital property. We point out also that exemptions authorized under Article 9, Section 2(2) apply only if the charitable institution is the owner of the property in question, not merely its lessee. *Kunes,* 121 Ariz. at 416, 590 P.2d at 1362.

¶ 23 The tax court's ruling issued before this court decided *Circle K Stores.* In that case, the state advocated an interpretation of the $50,000 exemption for business personal property in Article 9, Section 2(6) of the Arizona Constitution as applicable only once per property owner rather than once per business location. The taxpayers contended that ADOR's interpretation would violate the Uniformity Clause as analyzed and applied in *America West Airlines v. Department of Revenue,* 179 Ariz. 528, 535, 880 P.2d 1074, 1081 (1994).

¶ 24 *Circle K Stores* rejected this contention on the ground that, unlike the situation in *America West,* differing taxation of property within the same class was "constitutionally authorized by another provision—Article 9, Section 2(6)." 199 Ariz. at 409, ¶ 25, 18 P.3d at 720. Citing the principle that specific constitutional provisions control over more general ones, the court stated:

> Assuming that Article 9, Section 2(6) authorized the legislature to differently tax personal property within the same, distinct class, we conclude that the legislature and the electorate intended this provision to control. Stated another way, Article 9, Section 2(6) carves out an exception to the Uniformity Clause....

*Id.* at 410, ¶ 28, 18 P.3d at 721.

¶ 25 The same analysis applies to the exemption in A.R.S. § 15–1637(D) authorized by Article 9, Section 2(2). Article 9, Section 2(2) authorizes legislative exemptions from taxation for property of charitable institutions that is not used or held for profit. The Uniformity Clause is of far more general scope. Accordingly, to the extent the application of an exemption authorized by Article 9, Section 2(2) might produce effects inconsistent with the Uniformity Clause, Article 9, Section 2(2) controls.

¶ 26 The same conclusion flows from a different and equally accurate way of viewing the interplay of the Uniformity Clause with provisions of the Arizona Constitution that create or authorize tax exemptions. The Uniformity Clause requires that the "taxes" on each class of property must be uniform. The Clause thus presupposes that the properties to which it applies are taxable. Because properties to which constitutional exemption provisions apply are by definition not taxable, the Uniformity Clause therefore does not apply to them.

¶ 27 As we noted in *Circle K Stores,* our interpretation

> recognizes the ongoing viability of the Uniformity Clause but acknowledges the ability of the legislature and the electorate, working together, to create exceptions to that provision. *See Airport Properties [v. Maricopa County],* 195 Ariz. [89,] 101, ¶ 42, 985 P.2d [574,] 586 [ (App.1999) ] ("For tax purposes, then, an 'exemption' implies a discrete exception to the general rule of taxation, carved out of a category or categories that would otherwise be subject to uniform taxation.").

*Id.* at ¶ 29, 18 P.3d 713. This reasoning applies with equal force to constitutional exemptions such as that provided by Article 9, Section 2(2) of the Arizona Constitution.

¶ 28 The tax court was mistaken in concluding that the Uniformity Clause required it to exclude off-campus properties purchased by UMCC from the exemption accorded by A.R.S. § 15–1637(D). Because it is undisputed that those properties were not used or held for profit during the tax years at issue, the tax court erred in determining that they did not qualify for exemption under § 15–1637(D).

¶ 29 Our holding does not preclude the assessor from verifying in the future that the use of the properties in question is within the limits of Article 9, Section 2(2). Under A.R.S. § 42–11152(A) (Supp.2001), with certain exceptions not applicable here, all persons who claim exemption under any provision of Article 9, Section 2 of the Arizona Constitution must comply with the affidavit and verification procedures specified in A.R.S. §§ 42–11151 through 42–11153 (1999 and Supp.2001). The language that establishes this requirement does not limit it to claims for exemptions that are implemented by provisions of Title 42, Arizona Revised Statutes. It applies as well to exemption claims under A.R.S. § 15–1637(D) or any other tax exemption created by or under authority of Article 9, Section 2.

**454**

¶ 30 In this case, however, the assessor does not present as a cross-issue any contention that the judgment should be affirmed because UMCC failed to comply with A.R.S. §§ 42–11151 through 42–11153 for any of the tax years at issue here. Our analysis immediately above therefore has no impact on the disposition of this particular case.

¶ 31 Because of our analysis in this appeal, we need not consider whether all or any of UMCC's six off-campus parcels might additionally be exempt under A.R.S. § 42–11105(A), 42–11105(B), or 42–11107. Further, we leave to the tax court on remand the initial ruling on the assessor's bid to limit his refund liability based on UMCC's delinquent tax payments on some of its parcels and UMCC's non-ownership of certain parcels by January 1 of some of the tax years in question.

¶ 32 UMCC requests an award of attorneys' fees on appeal under A.R.S. § 12–348(B) (Supp.2001). In the exercise of our discretion, we grant the request. UMCC may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 33 The judgment is reversed and remanded for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge, and WILLIAM F. GARBARINO, Judge.